Sammy L. BECKENDORFF et al., Appellants,

v.

HARRIS–GALVESTON COASTAL SUBSIDENCE DISTRICT, Appellee.

No. 1716.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Oct. 31, 1977.

Rehearing Denied Nov. 30, 1977.

Joe G. Roady, Cox, Pakenham & Roady, Sam W. Levy, Levy & Levy, Houston, for appellants.

John L. Hill, Atty. Gen, David M. Kendall, Jr., First Asst. Atty. Gen., Austin, Troy Webb, Chief, Environmental Protection Div., Donald W. Allee, John S. Teutsch, Linda M. Wells, Asst. Attys. Gen., Houston, Carl G. Mueller, Jr., Steven C. Oaks, Butler, Binion, Rice, Cook & Knapp, Houston, for appellee.

COULSON, Justice.

This is an appeal from a consolidated action brought by a number of water well owners and users in western Harris County seeking a determination that the act creating the Harris-Galveston Coastal Subsidence District (the Act) is unconstitutional. The district court upheld the constitutionality of the Act. We affirm.

In April 1975, in response to the serious problems posed by subsidence in the Texas Gulf Coast area, the Texas Legislature passed an act, Tex. Laws 1975, ch. 284 at 672, creating the Harris-Galveston Coastal Subsidence District. The Act provided for the creation of a district board with full power to administer the provisions of the Act and implement its purpose, the regulation of groundwater withdrawal within the district. By the terms of the Act, regulation of such withdrawal, and hence control of subsidence, was to be accomplished by requiring the owner of any well within the district (with certain exceptions for small wells) to obtain a permit from the board before the well could be operated. These permits could incorporate whatever terms and conditions the board felt were necessary to control and prevent subsidence. Under section 37 of the Act, the board was required to collect a fee when permits were issued, the fee being based on the term of the permit and the maximum amount of groundwater the board had authorized to be withdrawn from the well.

In October 1975 the district board issued an order setting the permit fee rate at 1.2

cents for each one thousand gallons of water pumped. Two groups of plaintiffs promptly filed separate suits challenging this order. These suits were subsequently consolidated, and several months after that, a third group of plaintiffs intervened in the consolidated action. All of the plaintiffs are, by their own characterization, owners and users of water wells in the western part of Harris County, and are "essentially rice farmers." In a nonjury trial, the district court upheld the constitutionality of the Act and sustained the validity of the district's order.

■■■ In their presentation to this court, the appellants initially complain that article XVI section 59 of the Texas Constitution, the conservation amendment, does not authorize the creation of a conservation and reclamation district for the purpose of controlling subsidence. Article XVI section 59(a) provides:

The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

Section 1(a) of the Act creating the Harris-Galveston Coastal Subsidence District states:

The purpose of this Act is to provide for the regulation of the withdrawal of groundwater within the boundaries of the district for the purpose of ending subsidence which contributes to or precipitates flooding, inundation, or overflow of

any area within the district, including without limitation rising waters resulting from storms or hurricanes.

A fair reading of the Act indicates that its purpose is not the control of subsidence to that end alone, but the control of subsidence so as to control flooding and inundation. The control of flooding is prominently set out in article XVI section 59(a) as an approved form of conservation of the state's natural resources. The constitution does not purport to define the methods by which flooding is to be controlled. That was left to subsequent legislative acts such as the one in issue.

Appellants' points of error one and two are overruled. As a result of the express constitutional basis for the Act, we need not consider appellants' police power arguments.

■■■ Appellants next complain that the Act is void for failure to comply with subsection (e) of article XVI section 59. The first sentence of that subsection provides that no law creating a conservation and reclamation district shall be passed unless a copy of the bill has been delivered to the governing body of each political subdivision within the proposed district. Appellants assert that such delivery was not made, and they offered evidence tending to show nondelivery. This challenge, of its nature, fails since it seeks to violate the enrolled bill rule.

The enrolled bill rule has been repeatedly stated to be that a duly authenticated, approved, and enrolled statute imports absolute verity and is conclusive that an act was passed in every respect according to constitutional requirements. *E.g., Jackson v. Walker*, 121 Tex. 303, 49 S.W.2d 693 (1932); *Ellison v. Texas Liquor Control Board*, 154 S.W.2d 322 (Tex.Civ.App.—Galveston 1941, writ ref'd). While this court believes such a statement of the rule is too broad, the dignity and weight of the decisions in which it appears convinces us that we must apply it as set forth. Appellants' evidence of nondelivery is clearly an attempt to establish that the Act was not passed according to

constitutional requirements. Such impeachment is absolutely prohibited. An authenticated statute is the best evidence that the required formalities were observed in its passage, and the courts will not exercise the power of going behind and inquiring into the manner of enactment.

Points of error six through nine are overruled.

■ The challenge to the constitutionality of the Act under subsection 59(e) is not limited, however, to the issue of non-delivery. Appellants also assert that the final sentence of the subsection was violated. That sentence provides that any "special law" creating a conservation and reclamation district must comply with the provisions of the "general laws then in effect" relating to consent by political subdivisions to the creation of the district and inclusion of land within it. The appellants argue that this sentence creates a requirement that special laws, such as the Act, contain the specific language found in the general laws which relate to these matters. We disagree. The constitution requires compliance with the general laws; it does not require incorporation of their provisions.

■ The problem in this is identifying the general laws referred to. Appellants assert that they are sections 51.035 and 51.036 of the Texas Water Code. While those laws unquestionably deal with the appropriate topics, it is not evident that they are the laws referred to.

Title Four of the Texas Water Code, "General Law Districts," contains twelve chapters. The first of these, chapter 50, contains the provisions applicable generally to the districts; the other chapters deal with specific types of districts. The sections cited by the appellants are found in chapter 51, the Water Control and Improvement District chapter. Sections in other chapters also deal with consent by political subdivisions and inclusion of land within a district. The treatment of these matters is by no means uniform. *Compare* Tex. Water Code Ann. § 51.035 *with* Tex. Water Code Ann. § 54.016. In light of this disparity we hold that the "general laws" referred to in article XVI section 59(e) are those found in chapter 50, the laws applicable to all districts. An examination of chapter 50, however, reveals no provisions dealing with consent of political subdivisions to the creation of districts or the inclusion of land within them and, as a result, there can be no failure to comply with such provisions.

We view the language in section 59(e), "general laws then in effect," as indirectly supporting our conclusion since it indicates that the Legislature did not necessarily intend the provision to have reference to existing laws.

Points of error four and five are overruled.

■ In their tenth and eleventh points of error appellants challenge the propriety of using permit fees to finance the district, arguing that they are not authorized by article XVI section 59(c) or permissible under it. Section 59(c) provides that the Legislature has the power to determine whether a conservation and reclamation district shall incur indebtedness and issue bonds to be serviced by a tax. It does not, however, compel such financing. *Lower Colorado River Authority v. McCraw*, 125 Tex. 268, 83 S.W.2d 629 (1935). Absent a constitutional provision prohibiting, either in express terms or by necessary implication, an act of the Legislature, that act must be held valid. *Texas Nat. Guard Armory Board v. McCraw*, 132 Tex. 613, 126 S.W.2d 627 (1939); *Lytle v. Halff*, 75 Tex. 128, 12 S.W. 610 (1889). We find nothing in section 59(c) which prohibits permit fee financing.

Points of error ten and eleven are overruled.

Appellants next argue that the permit fees charged by the district are not regulatory measures, but are instead taxes, and that since they are taxes they are unconstitutional for a number of reasons.

■ In determining whether a statutorily created charge is a regulatory or a tax measure, the test is that of purpose. If the primary purpose of the charge is to raise revenues then it is a tax; if its primary

purpose is regulation then it is a license fee. *Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896 (1937). Since the test is purpose and not effect, a charge may have the effect of raising revenue and not be a tax. *City of Fort Worth v. Gulf Refining Co.*, 125 Tex. 512, 83 S.W.2d 610 (1935).

■ The overall purpose of the act in issue here is undeniably regulatory; the Act was passed and the district created for the purpose of regulating groundwater withdrawals. The Act contemplates achieving this regulation in large part by conditioning the issuance of permits upon payment of a fee based on the amount of water to be withdrawn during the term of the permit. We believe these fees are intended to operate as an economic disincentive to groundwater withdrawal, and thereby regulate it. Particularly persuasive in this regard is the fact that the fee is based on the amount of water to be taken from the well, and is not simply a flat fee charged for each well irrespective of its production. That revenue for the district is generated by the fees does not detract from their regulatory purpose. As noted above, it is purpose and not effect or use which is the test.

Since we find that the fees are a regulatory measure and not taxes, we need not discuss their possible deficiencies as taxes. Point of error twelve is overruled.

■ The heart of the appellants' attack on the Act is found in their equal protection and due process arguments. They assert that the imposition of a permit fee which is uniform throughout the district fails to account for the differing effects which groundwater withdrawal has at different places in the district, that their wells are regulated although they do not contribute to the specific type of subsidence which the Act seeks to control, and that wells outside of the district which do contribute to such subsidence are not regulated. In light of these facts, appellants argue that the Act is arbitrary and unreasonable, and therefore unconstitutional.

The cause of the appellants' initial complaint, however, has been removed. By an amendment (House Bill No. 390) to the Act, passed by the 65th Legislature this past session, the permit fee for wells used for agricultural purposes will be the lower of either seventy percent of the regular rate established by the board or a percentage of the regular rate which directly reflects the contribution of agricultural purpose wells to subsidence as compared to the contribution of other wells. The relative contributions of the different types of wells will be established by an inquiry to be made by the United States Geological Survey. The permit fee rate change is retroactive, and the district is required to refund all excesses it collected before the amendment was passed.

Appellants are, by their own designation, farmers, using their wells for irrigation purposes. Their points of error relating to the unreasonableness of a uniform permit fee rate are now moot, since the fee rate applied to their wells will either directly reflect their contribution to subsidence or be relatively less than such contribution.

Points of error twenty one and twenty two are overruled.

It remains, however, that their wells will be subject to other forms of regulation by the district. Appellants' wells must still have permits in order to operate and the board, under section 24 of the Act, can attach to those permits whatever terms or conditions it feels are necessary to control and prevent subsidence. Appellants argue that any regulation of their wells is improper since their wells do not contribute to the specific type of subsidence the Act seeks to control, "subsidence which contributes to or precipitates flooding, inundation, or overflow of any area within the district" (Act § 1(a)), and because other wells which do contribute to such subsidence are not controlled by the Act.

■ The rule is well established that legislative classifications are presumed to be constitutional (unless they involve fundamental personal rights or "suspect categories" which are clearly not present here) and will be sustained upon a simple showing of rational relation to a legitimate state interest. *Ohio Bureau of Employment*

*Services v. Hodory*, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977); *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). We find such a rational relationship here.

The evidence produced during the trial of this case shows that the Legislature could have properly concluded that appellants' wells contributed to the subsidence which causes flooding. The contention that this contribution standing alone would not have caused the problem, or that the contribution was small, is not a sufficient rebuttal. An individual's action may be lawfully regulated when it works in concert with others' actions to produce an effect, even though the individual action of itself would be incapable of producing the effect, or is de minimus. *See, e.g., Wickard v. Filburn*, 317 U.S. 111, 127–28, 63 S.Ct. 82, 87 L.Ed. 122 (1942). Moreover, the gravity of the danger to be avoided directly bears on the extent of the measures which may be taken to avoid it. We believe that the seriousness of the subsidence problem in Harris and Galveston Counties justifies greater regulation than a lesser problem would, and consequently justifies regulation of appellants' wells.

The Legislature did not, however, choose to regulate every well which contributes to the problem. The Act is limited to wells in Harris and Galveston Counties, and it is appellants' argument that wells in surrounding counties not only contribute to subsidence, but make a much greater contribution than their own wells do.

 This argument is defeated by two distinct, yet related, lines of cases. First, it is well established that constitutional equal protection relates to persons as such, and not to areas. *McGowan v. State of Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Salsburg v. State of Maryland*, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954). States have wide discretion in determining whether laws shall operate statewide or only in certain counties, the legislature "having in mind the needs and desires of each." *Salsburg v. State of Maryland*, 346 U.S. 545, 552, 74 S.Ct. 280,

284, 98 L.Ed. 281 (1954). In light of these authorities, we see no constitutional requirement that the subsidence district extend beyond Harris and Galveston Counties, even though legitimate objects of regulation exist outside them.

 The second answer to appellants' argument is the rule that the legislature may implement their programs step by step, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Katzenbach v. Morgan*, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The Texas Legislature has chosen to restrict its initial effort in controlling subsidence to two counties, the two in which, undisputedly, the effects of the problem are the greatest. Section 4(b) of the Act provides a mechanism for expansion of the district into other counties, suggesting that the Legislature anticipates broader regulation in the future. Such a gradual attack on the problem is both constitutionally permissible and practically desirable.

Points of error thirteen through twenty are overruled.

 In their twenty-third point of error appellants argue that the adoption of a district plan is an absolute prerequisite to the issuance of annual permits and the charging of permit fees. The district issued permits with a one year term and charged fees for them before adopting such a plan.

While it is true that section 24(b)(1) requires the board to consider the district plan in deciding whether to issue a permit, it is also true that section 18(a) authorizes the board to adopt temporary rules and regulations before adopting the district plan. Appellants seek to distinguish "temporary permits" issued under section 18(a) from "annual permits" issued under section 24 and urge that fees can only be charged for the latter. We are not convinced.

We initially note that where the meaning of the provisions of an act is unclear the interpretation given them by the administrative agency charged with its implementation is entitled to great weight. *E.g., Calvert v. Kadane*, 427 S.W.2d 605 (Tex. Sup. 1968). This is particularly true where the administrative action being attacked is one taken while the agency is in its infancy and is operating without the benefit of judicial constructions of its enabling statute. *Power Reactor Devel. Co. v. International U., etc.*, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961).

The district is required by the Act to formulate a plan, but no date is specified for its adoption. Until the plan is adopted the district is authorized to employ temporary regulatory measures. Appellants seem to admit, and we believe, that this includes regulation by permits. Since the temporary regulation period will last until a plan is adopted, and since no deadline for such adoption has been established, we find no statutory impediment to the issuance of temporary permits with a term of one year. Further, there is nothing in section 37, the section which provides for permit fees, which limits its application to permits issued after the district is fully organized and the district plan has been adopted.

The district's action was permissible and point of error twenty-three is overruled.

All of appellants' other points of error have been duly considered and are overruled.

Affirmed.