Murphy SCURRY, et al., Appellants,

v.

TEXAS AIR CONTROL BOARD, et al., Appellees.

No. 13372.

Court of Appeals of Texas, Austin.

Oct. 7, 1981.

Rehearing Denied Oct. 21, 1981.

W. Thomas Buckle, Scanlan, Buckle & Fleckman, Austin, for appellants.

Mark White, Atty. Gen., Philip S. Haag, Asst. Atty. Gen., Austin, for Texas Air Control Bd.

Jeffrey Civins, Vinson & Elkins, Houston, for Pelican Terminal Corp.

PHILLIPS, Chief Justice.

This appeal was brought by appellants, Murphy Scurry, Sally Fish and Mason Guest, from a decision of the trial court affirming appellee Texas Air Control Board's order entered pursuant to Section 3.27 of the Texas Clean Air Act.[1] The order issued construction permits to appellee, Pelican Terminal Corporation, authorizing the construction and installation of a crude oil unloading facility on Pelican Island and the construction and installation of a tank farm near Texas City. Appel-

---

1. All statutory references herein pertain to the Texas Clean Air Act, Tex.Rev.Civ.Stat.Ann. art. 4477–5 (Vernon 1976).

lants have duly perfected their appeal to this Court.

We affirm the judgment of the trial court.

Appellants, who reside across the Galveston Channel from the proposed crude oil unloading facility, have presented several principal questions for our determination.

The first is the question of whether the Texas Air Control Board (TACB) hearing examiner erred in excluding evidence regarding vessel emissions. This evokes the collateral question of possible error by the trial court in concluding that the TACB correctly determined that vessels, when docked, are not part of the proposed onshore crude oil unloading facility under the provisions of the Texas Clean Air Act. If the vessels are part of the facility, the vessel emissions would be part of the facility emissions. TACB would then have to consider those vessel emissions in deciding whether to issue the construction permit.

Section 3.27 of the Act establishes the TACB's construction permit program, the substantive statutory basis for the contested case hearing in the present case. Subsection (a) provides in pertinent part:

"Any person *who plans to construct any new facility* . . . which may emit air contaminants into the air of this State shall apply for and obtain a construction permit from the board before *any actual work is begun on the facility. . . .*" (Emphasis added).

Subsection (b) requires the appellant to submit "plans and specifications necessary for determining whether *the proposed construction* will comply with applicable air control standards . . ." (Emphasis added). Subsection (c) (Supp.1980–81) requires the Board to find as a prerequisite to permit issuance, that:

"*the proposed facility* will utilize at least the best available control technology,

with consideration given to the technical practicability and economic reasonableness of reducing or eliminating *the emissions resulting from the facility* and no indication that the *emissions from the proposed facility will* contravene the intent of the Texas Clean Air Act. . . . ." (Emphasis added).

The Act requires a person who plans to build a facility which contains sources [2] that have the potential to emit air contaminants, to apply for and receive a construction permit from the TACB prior to beginning construction. Appellants contend that vessels are sources of air contaminant emissions at the proposed crude oil loading facility and that under the Act the emissions from the vessels must be evaluated by the TACB in determining whether to issue a construction permit. They further contend that unless vessels are included in the proposed unloading facility, the worthy purpose of prevention of future air pollution problems through the permit system is totally frustrated.

Appellants cite *Europak, Inc. v. County of Hunt*, 507 S.W.2d 884 (Tex.Civ.App.1974, no writ) where the court indicated that a holding pen for horses were sources within the proposed facility subject to Sec. 3.27. Appellants contend that the analogy between this case and the case at bar is obvious. The owner of the slaughter house was holding the horses in order to ultimately utilize their meat and the odors from horse manure were an unwanted but unavoidable air contaminant from the facility. This, appellants claim, is identical to emissions being discharged from vessels docked at the terminal while the terminal is obtaining the vessel's crude oil.

Europak, Inc., is not decisive for two reasons. First the court found that noxious odors would emanate from the slaughtering plant as well as from the horse pens; secondly, the court merely held that the

---

**2.** Source is defined as a point of origin of air contaminants, whether privately or publicly owned or operated. Sec. 1.03(2).

defendant (Europak) could be enjoined from building the plant pending its obtaining a permit from the TACB. The court did not hold that the emissions from the horses must be considered by the TACB.

The term "facility" is not defined in the Act or in the regulations promulgated by TACB; however, in our judgment, the exclusion of vessel emissions from consideration in a Sec. 3.27 permit application, as determined by the TACB and the court below, complies with the express language of the Act and the pertinent board regulations. Similarly, the prohibition on construction without a permit applies to the terminal, not to vessels or their operation. Further, the construction permit requirement applies only to facilities that the appellants own or operate.

The contention pressed by appellants raises the question of TACB's permit authority over indirect sources of air contaminants. We agree with Att'y Gen. Opinion No. H–455 which defined an indirect source as "one which attracts mobile source activity . . . ." This opinion further stated:

"The Texas Clean Air Act makes no clear or implied reference to indirect sources. Section 1.03 defines a 'new source' as a 'stationary source,' § 1.03(8), and a 'source' as a 'point of origin of air contaminants,' § 1.03(2). While these terms are not used in Section 3.27, which establishes the permit requirements, their definitions indicate that the Legislature intended to regulate only direct sources."

.   .   .   .   .

"Had the Legislature intended to give the Board authority to require permits for so broad a category as indirect sources, it would have done so more explicit language and with more guidance."

The rules of the TACB tend to reinforce the view that vessel emissions associated with unloading are not to be considered part of a marine terminal facility. Rule 131.08.00.001 of Regulation VI, 31 TAC § 116.1 (1980), requires "[a]ny person who plans to construct any new facility" to obtain a permit. Rule 131.08.00.002, 31 TAC § 116.2 (1980), provides that: "The owner of the facility or the operator of the facility authorized to act for the owner is responsible for applying for and obtaining a permit to construct and operate." Rule 131.08.00.-003, 31 TAC § 116.3 (1980), requires the "owner or operator of the proposed facility" to submit information to show that the facility meets certain requirements. Appellees are not owners or operators of the vessels.

The TACB's exclusion of vessel emissions is in accordance with the clear language of both the Act and the regulations. Even if the Act is ambiguous—and clearly it is not—great weight should be given to the construction placed upon it by the agency charged with its implementation. *Beckendorff v. Harris-Galveston Coastal Subsidence District*, 558 S.W.2d 75 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n. r. e.), 563 S.W.2d 239 (Tex. 1978); *see also Wagner v. City of San Angelo*, 546 S.W.2d 378 (Tex.Civ.App.—Austin 1977, no writ); *Lumbermen's Underwriters v. State Bd. of Insurance*, 502 S.W.2d 217 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.).

We overrule appellants' contention that the court erred in concluding that the TACB correctly determined that the onshore crude unloading facility will comply with all rules and regulations of the TACB.

Finally, appellants apparently contend that vessels are on the "property" of Pelican Terminal and therefore must be considered as part of the facility. The pertinent rule states quite the contrary. Property is defined as:

"[1] All land under common control or ownership on which any source or combination of sources is located, coupled with all improvements on such land, and all fixed or movable objects on such land, *or*

[2] Any vessel on the waters of this state which may constitute a source (emphasis and numerals added)."

Rule 131.01.00.001(46); 31 TAC § 101.1(1) (1980); 4 Tex.Reg. 1360 (1979). The term "*or*" is controlling and vessels are not considered part of the property of an on-shore facility.

We also overrule appellants' substantial evidence point as to the board's fact finding with respect to the emissions from the terminal, as appellants seem to insist that the emissions from the vessels must be included in these findings.

We are not holding that the vessel emissions may not be regulated separately.

The judgment of the trial court is in all things affirmed.