NO. 07-93-0162-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 27, 1994

______________________

CITY OF LUBBOCK, APPELLANT

V.

CURREY ENTERPRISES, INC., D/B/A 

BUDGET RENT-A-CAR, APPELLEE

______________________

FROM THE 237TH JUDICIAL DISTRICT COURT OF LUBBOCK COUNTY;

NO. 92-540,858; HONORABLE JOHN R. McFALL, JUDGE

______________________

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

In twenty three points of asserted error, the City of Lubbock (City) challenges a summary judgment in favor of appellee, Currey Enterprises, Inc., d/b/a Budget Rent-A-Car (Currey), declaring the City's Off-Airport User Fee ordinance invalid and permanently enjoining enforcement of the ordinance.  For reasons hereinafter expressed, we reform the judgment and, as reformed, affirm it.

The City owns and operates a municipal airport known as the Lubbock International Airport.  The City leases space in the airport's terminal building to airlines, vendors, and car rental companies.  The lease agreements between the City and the car rental companies provide for payment of 10% of the company's annual revenue to the City.  Until April 1992, appellee Currey leased space in the airport terminal building for the purpose of conducting its car rental business.  In an effort to resolve an ongoing dispute not relevant to this case, Currey and the City agreed that Currey could terminate its lease with the airport.  Currey began operating its business from a location off the premises of the airport but continued to pick up and deliver its customers to and from the airport.

On August 27, 1992, the City enacted an ordinance regulating airport ground transportation services, also referred to as the Off-Airport User Fee Ordinance.  Pursuant to the ordinance, any person who "provides ground transportation services
(footnote: 1) to arriving or departing airline passengers at the Airport for commercial or business purposes" must obtain a permit from the City.  The ordinance also imposes a permit fee and a user fee for the "privilege" of providing these transportation services.

The ordinance classifies off-airport operators as either:  (1) car and truck rental companies; (2) commercial shuttle operators and parking facility operators; or (3) hotels and motels.  Each category is governed by a different fee structure.  Hotels and motels pay an annual permit fee of $200.  Commercial shuttle operators and parking facility operators pay an annual permit fee of $50 plus a user fee of $100 per month.  Car and truck rental companies pay an annual permit fee of $50 plus a user fee of nine percent (9%) of gross receipts above the first $25,000 derived from airport generated business in a year.  The ordinance also creates a presumption that ninety percent (90%) of off-airport car and truck rental companies' business is airport generated and places the burden on the off-airport operator to prove that a lower percentage of its revenue was airport generated.
(footnote: 2)  In order for an off-airport operator to retain its permit, it must pay the required fees, maintain records, possess a specified amount of general liability insurance and name the City as an insured under the policy.
(footnote: 3)  Violation of the ordinance is punishable by a fine of up to $200.

On December 15, 1992, Currey brought suit against the City seeking declaratory relief and an order enjoining enforcement of the ordinance.  In seeking a judgment declaring the ordinance void, Currey contended that the ordinance imposed an occupation tax in violation of Article VIII, section 1(c) of the Texas Constitution and violated the equal protection provisions of Article I, section 3 of the Texas Constitution.  On March 25, 1993, the trial court granted Currey the summary judgment giving rise to this appeal.

The record reveals that the trial court concluded the user fee sought to be imposed by the ordinance was an occupation tax on the mechanical pursuit of renting cars and that the attempt to levy the tax was in violation of Article VIII, section 1(c) of the Texas Constitution.  It further concluded that the City was also prohibited from imposing such a tax because the state had not levied an occupational tax on car rental businesses.

In reviewing the propriety of this summary judgment, we must apply the standards for appellate review of such judgments as set out by the Texas Supreme Court in 
Nixon v. Mr. Property Management Company,
 690 S.W.2d 546 (Tex. 1985).  Those standards are:

1.  The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2.  In deciding whether there is a disputed material fact issue, evidence favorable to the non-movant will be taken as true;

3.  Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

Id
. at 549.

Additionally, where the constitutionality of a statute is challenged, it must be presumed that the legislative body did not intend to enact an unconstitutional statute.  
Vinson v. Burgess
, 773 S.W.2d 263, 266 (Tex. 1989).  This presumption has also been applied to ordinances.  
See
 
City of Fort Worth v. Gulf Refining Co.
, 125 Tex. 512, 83 S.W.2d 610, 617 (1935).

Initially, we must address the City's contention that the district court, acting as a court of equity, was without jurisdiction to enjoin enforcement of the ordinance because the ordinance is penal in nature.  The Texas Supreme Court recently reaffirmed the well established rule that, with a limited exception, a court of equity has no jurisdiction to enjoin enforcement of a criminal statute or ordinance.  
State v. Morales
, 37 Tex. Sup. Ct. J. 390 (January 12, 1994).  The exception to the rule allows a court of equity to enjoin enforcement of a penal statute or ordinance if the statute or ordinance is unconstitutional or otherwise void and its enforcement threatens irreparable injury to property rights.  In this suit, in addition to challenging the constitutionality of the ordinance, Currey argues that the ordinance threatens its right to continue to earn a living which, it argues, is a property right entitled to constitutional protection.  Indeed, in 
Smith v. Decker
, 158 Tex. 416, 312 S.W.2d 632 (1958), our supreme court held that "the right to earn a living is a property right within the meaning of our Constitution. . . ."  
Id.
 at 633.  
See also
 
Font v. Carr
, 867 S.W.2d 873, 875 (Tex.App.--Houston [1st Dist.] 1993, no writ); 
Majestic Industries, Inc. v. St. Clair
, 537 S.W.2d 297, 300 (Tex.Civ.App.--Austin 1976, writ ref'd n.r.e.).

We are aware of our sister court's decision in 
Bellew v. City of Houston
, 456 S.W.2d 185 (Tex.Civ.App.--Houston [1st Dist.] 1970, writ ref'd n.r.e.) concerning an ordinance prohibiting taxicab operators from picking up passengers at a certain airport unless they entered into an airport concession contract with the City.  
Id.
 at 186.  The appellant, a taxicab operator, alleged that the ordinance prohibited him "from earning money" from passengers leaving the airport because he did not have a contract with the City.  In affirming the trial court's dismissal of the suit for lack of jurisdiction, the appellate court noted that no person has a vested right to use public streets and highways for carrying on a business and that the City of Houston was authorized to enter into contracts to supply services at the airport under article 46d-4 of the Texas Revised Civil Statutes Annotated.  
Id.
 at 187.  The question before this court, however, is whether a user fee, based upon a percentage of gross receipts from airport generated business, amounts to an occupation tax rather than a fee as consideration for a contract granting the exclusive right to obtain customers from airport premises such as that involved in the 
Bellew
 case.

If the ordinance in question is an occupation tax based on the revenues of Currey's business, it affects the right to earn a living,
 a right the 
Smith
 court found to be sufficient to enjoin a penal statute.  
Smith
, 312 S.W.2d at 633.  To satisfy this prong of the test for enjoining a penal ordinance, the plaintiff is not obligated to show that irreparable injury has actually occurred; rather, it need only show that such injury is threatened.  We find that Currey has met this burden.

There is an additional reason why the City's position is not completely persuasive.  A reading of the ordinance reveals that it contains both criminal and civil provisions.  Those provisions of the ordinance requiring off-airport operators to obtain a permit from the City and meet particular requirements are clearly within the City's police power to protect the health, safety, and welfare of its citizens.  However, those provisions concerning the user fee of nine percent (9%) of gross revenues are civil in nature and would be recoverable only through a civil proceeding.  
See
 
e
.
g
., 
City of Corpus Christi v. McClaugherty
, 284 S.W.2d 927 (Tex.Civ.App.--San Antonio 1955, writ ref'd).  Any civil proceeding to recover payments due under a city ordinance or to revoke a permit for failure to pay user fees required by an ordinance is subject to the injunction power of an equity court.  
Payne v. Massey
, 145 Tex. 237, 196 S.W.2d 493, 496 (1946); 
Cabell's Inc. v. City of Nacogdoches
, 288 S.W.2d 154, 160 (Tex.Civ.App.--Beaumont 1956, writ ref'd n.r.e.); 
ABC Storage & Moving Co. v. City of Houston
, 269 S.W. 882, 886 (Tex.Civ.App.--Galveston 1925, writ ref'd).  The City's eleventh, thirteenth and fourteenth points are overruled.

Currey must also show that the ordinance sought to be enjoined is unconstitutional or otherwise void.  
Morales
, 37 Tex. Sup. Ct. J. at 391.  In its first, fourth, fifth, sixth, seventh, and eighth points of error, the City challenges the trial court finding that the ordinance is an unconstitutional occupation tax rather than a valid user fee.  That is the pivotal question presented by this appeal.

In determining that question we must first consider the City's argument that, by statute, it is expressly authorized to enact such an ordinance.  In support of that position, the City relies upon several provisions of the Municipal Airport Act, Tex. Rev. Civ. Stat. Ann. art. 46d-1 to  -22 (Vernon 1969 & Supp. 1994) (the Act).

Article 46d-2 of the Act authorizes a city to construct and operate airports.  Article 46d-7 specifically authorizes the adoption of "reasonable ordinances, resolutions, rules, regulations and orders" for governance of airports operated by a city.  Article 46d-4 authorizes cities to "enter into contracts, leases and other arrangements" for the use or improvement of the airport or to provide goods or services at the airport.  Additionally, the City cites Article 1175(3) of the Texas Revised Civil Statutes Annotated (Vernon Supp. 1994), contending that, as a home-rule city, it has "exclusive dominion, control, and jurisdiction" over the city's streets and grounds.

Relying on these statutory provisions, the City argues that it has exclusive dominion and control over the airport, including the power to impose fees for the "privilege" of providing services at the airport.  We believe that the City misconstrues the effect of these statutes on the circumstances of this case.  For example, Article 46d-4 grants the City the authority to enter into "contracts, leases, and other arrangements" with others who commercially use, improve, or provide goods or services to the airport.  Several cases cited by the City illustrate the actual effect of this statute.  In 
Bellew
, the City of Houston entered into a contract with a cab company whereby the company was granted the exclusive right to pick up passengers at a certain airport.  Referring to the City's article 46d-4 authority to enter into such a contract, the court affirmed the trial court's dismissal of the action.  
Bellew
, 456 S.W.2d at 187.  The City also cites 
Woolen v. Surtran Taxicabs, Inc.
, 801 F.2d 159 (5th Cir. 1986); 
Independent Taxicab Driver's Employees v. Greater Houston Transportation Co.
, 760 F.2d 607 (5th Cir. 1985); and 
Continental Bus System v. City of Dallas
, 386 F.Supp. 359 (N.D.Tex. 1974); however, these cases also involved contracts granting exclusive franchises pursuant to Article 46d-4.
(footnote: 4)  In the absence of such a contract, lease, or other arrangement, Article 46d-4 has no applicability.

In contrast, the ordinance at issue here is applicable to Currey because it does 
not
 have a contract or lease with the City.  The ordinance itself recites that it applies to any off-airport operator who is not a party to a lease or concession agreement with the City.  Clearly, the regulatory control the City seeks to impose upon Currey is not the type of "other arrangement" contemplated by Article 46d-4, nor has the City granted an exclusive franchise to another as was the case in 
Woolen
, 
Independent Taxicab Driver's
, and 
Continental Bus System
.  As there is no contract, lease or other arrangement involved in this case, Article 46d-4 is inapplicable.  We must, therefore, overrule the City's fifteenth and sixteenth points in which it contends that the trial court should have found the ordinance was authorized by Article 46d-4.

The City's reliance on the language of Article 1175, that the City have "exclusive dominion, control, and jurisdiction in, over and under the public streets," is also misplaced.  The inapplicability of the article is illustrated by the existence of Article 6698 of the Texas Revised Civil Statutes Annotated (Vernon 1977), and the manner in which it was construed in 
City of Corpus Christi v. McClaugherty
, 284 S.W.2d at 927.  Article 6698 authorizes municipalities to charge a permit fee or street rental fee not to exceed two percent (2%) of gross receipts on "motor vehicles transporting passengers for hire."  In 
McClaugherty
, the San Antonio Court of Civil Appeals found that the above quoted language was not sufficiently broad to authorize a city to charge such a fee to a car rental company.  
Id.
 at 928.  Although Article 1175 has undergone significant changes from the time 
McClaugherty
 was decided, the language relied upon by the City has existed unchanged since the statute's inception in 1913.
(footnote: 5)

The legislature, implicitly aware of the provisions of Article 1175, obviously felt that it was necessary to explicitly authorize municipalities to charge those businesses transporting passengers for hire a user fee of up to two percent of their gross receipts.  In doing so, the legislature must have felt that such authority did not exist in the municipality's "exclusive dominion, control and jurisdiction" of the public streets.  To view Article 1175 otherwise would render Article 6698 meaningless.  The legislature will not be presumed to do a useless thing.  
Grunsfeld v. State
, 843 S.W.2d 521, 544 (Tex.Crim.App. 1992); 
Barfield v. City of La Porte
, 849 S.W.2d 842, 845 (Tex.App.--Texarkana 1993, writ granted).  We thus overrule the City's tenth point asserting that the trial court erred in concluding the provisions of Article 1175 were not sufficiently broad to authorize the ordinance.

The City also cites section 2210(a)(9) of the Title 49 appendix of the United States Code as authorizing the passage of the ordinance.  Again, we disagree.  This section concerns conditions imposed on the approval of federal airport development grants.  The provision the City relies upon provides that the recipient must promise to "maintain a fee and rental structure for the facilities and services . . . which will make the airport as self-sustaining as possible under the circumstances existing at that particular airport."  49 App. U.S.C. § 2210(a)(9) (1988).
(footnote: 6)  Section 2210(a) requires that the Secretary of Transportation "receive assurances, in writing" that the airport operator will comply with, inter alia, Section 2201(a)(9) concerning airport fees and rental charges.  
Id.
  If the fee sought to be imposed by the airport operator is violative of the state constitution or is otherwise void, it cannot be imposed and, thus, cannot be counted among possible fee and rental structures to make the airport self sustaining.  This section imposes obligations on the Secretary of Transportation in approving airport development projects.  It does not present a federal supremacy override of an airport operator's determination of allowable fees and rentals.  Thus, the City's seventeenth point of error contending that the trial court erred in not concluding that the section authorized the passage of the ordinance is overruled.

In support of its position that the fees imposed by the ordinance at issue are impermissible, Currey relies upon Article VIII, section 1(c) and (f) of the Texas Constitution.  Section 1(c) prohibits occupation taxes on mechanical pursuits while section 1(f) prohibits a city from imposing an occupation tax greater than one-half that imposed by the state on a given occupation.

Under Texas law, the name given a fee imposed by a legislative body is not determinative of whether the charge is a user fee or a tax, 
H. Rouw Co. v. Texas Citrus Comm'n
, 151 Tex. 182, 247 S.W.2d 231, 234 (1952); 
Prudential Health Care Plan v. Comm'r of Insurance
, 626 S.W.2d 822, 829 (Tex.App.--Austin 1981, writ ref'd n.r.e.); rather, the inquiry is whether the primary purpose of the charge is regulation, or the subsidization of the cost of regulation, or whether the charge is imposed to raise money for public purposes, 
Conlen Grain and Mercantile, Inc. v. Texas Grain Sorghum Producers Board
, 519 S.W.2d 620, 623 (Tex. 1975).  This test has been consistently used to distinguish user or license fees from taxes.  
E.g.
, 
id.
; 
Robinson v. Hill
, 507 S.W.2d 521, 526 (Tex. 1974); 
H. Rouw Co.
, 247 S.W.2d at 234; 
Hurt v. Cooper
, 130 Tex. 433, 110 S.W.2d 896, 899 (1937); 
Creedmoor Maha Water Supply Corp. v. Barton Springs-Edwards Aquifer Conservation Dist.
, 784 S.W.2d 79, 81-82 (Tex.App.--Austin 1989, writ denied); 
Prudential Health Care Plan
, 626 S.W.2d at 829; Boyd R. Laughlin, 
Taxation-License Fee-Occupation Tax-Distinctio
n
, 14 Tex. L. Rev. 278 (1936).  The primary purpose of a statute is to be determined from a consideration of the statute itself as a whole, 
H. Rouw Co.
, 247 S.W.2d at 234.

If the fees sought to be charged by the City are taxes, their imposition on a particular occupation would necessarily make the taxes occupation taxes.  
Conlen
, 519 S.W.2d at 623.  Article VIII, section 1(f) prohibits a city or county from levying a tax on an occupation that is not taxed by the state.  
City of Fort Worth v. Gulf Refining Co.
, 125 Tex. 512, 83 S.W.2d 610, 617 (1935); 
Hoefling v. City of San Antonio
, 85 Tex. 228, 20 S.W. 85, 88-89 (1892).

The propriety of the trial court's ruling is necessarily dependent upon the summary judgment evidence that was before the court; therefore, we must now address the City's twenty-first point.  In that point, the City contends that "the trial court erred in using as summary judgment evidence, findings of fact which the court prepared" for the City's appeal of the temporary injunction the court had issued in the case.  Disposition of that point requires us to determine what summary judgment evidence was properly before the trial court.

Currey offered as summary judgment evidence the affidavit of its attorney and an affidavit of Leslie Currey, the president of Currey Enterprises.  Currey's motion for summary judgment also directed the trial court to the findings of fact filed by the court after it issued the temporary injunction.  Additionally, the motion refers the court to the ordinance itself, a certified copy of the ordinance being attached to the brief in support of the motion for summary judgment.

We agree with the City that findings of fact entered in a temporary injunction proceeding are not competent summary judgment evidence and may not be considered in determining a movant's right to summary judgment.  Rule 166a contemplates several types of evidence that may be used in support of a motion for summary judgment including affidavits, depositions, interrogatory answers, other discovery responses, and authenticated or certified public records.  Tex. R. Civ. P. 166a(c).  Additionally, the evidence must be offered in a form that would be admissible at a trial on the merits.  
Brownlee v. Brownlee
, 665 S.W.2d 111, 112 (Tex. 1984); Tex. R. Civ. P. 166a(f).

Even if we consider the findings as an authenti­cated public record, we can find no theory under which a trial court's findings of fact filed in a prior temporary injunction proceeding could be admissible as evidence at a later trial on the merits.  Therefore, we hold the findings of fact offered by Currey in its motion for summary judgment are not competent summary judgment evidence and may not be considered in our review to determine the propriety of the summary judgment.

However, we are not persuaded by the City's assertion that the trial court relied on the findings in granting the summary judgment.  Currey's offer of incompetent summary judgment evidence did not require that it be relied upon, or even considered, by the trial court.  If there is sufficient competent evidence in the record to support the judgment, the trial court did not err in rendering its judgment and the City's point must fail.  The findings tendered by Currey are:

1.  On or about August 27, 1992, Defendant CITY OF LUBBOCK, enacted an ordinance requiring the payment of fees by off-airport car rental companies.

2. The State of Texas does not impose an occupation tax on car rental companies.

3.  The ordinance requires payment by Currey of nine percent (9%) of gross receipts over $25,000 from airport business. 

4.  Car rental companies are engaged in mechanical pursuits.  Currey is engaged in the car rental business.

We will address each finding seriatim.

Currey attached a certified copy of the City's ordinance to its brief in support of its motion for summary judgment and requested, in its brief, that the trial court take judicial notice of the ordinance as permitted by Rule 204 of the Texas Rules of Civil Evidence.  As the request was in a brief rather than by motion, the court was not required to take the requested judicial notice; however, the rule allows the court to take notice of the ordinance on its own motion.  
Id.
  The court was not required to state, on the record, that it took judicial notice of the ordinance.  
See
 
Keene Corp. v. Rogers
, 863 S.W.2d 168, 175 (Tex.App.--Texarkana 1993, no writ).  Additionally, as the ordinance was a legislative matter, the requirements for judicial notice of adjudicative facts provided by Rule 201(e) of the Texas Rules of Civil Evidence was not applicable.  Olin G. Wellborn III, 
Judicial Notice Under Article II of the Texas Rules of Evidence
, 19 St. Mary's L.J. 1, 11 (1987).  Therefore, the ordinance was properly before the trial court, thereby making the first and third findings offered by Currey irrelevant.
(footnote: 7)

The second finding Currey offered as summary judgment evidence was the court's finding that the State of Texas does not impose an occupation tax on car rental companies.  Currey also attached the affidavit of its attorney, J. Edwin Price, stating that he had researched the issue and determined that the State of Texas does not impose such a tax.  Even without considering this evidence, the court could have taken judicial notice that the state does not impose an occupation tax on car rental companies because no evidence is necessary to establish the content of state law.  Indeed, a trial court is required to take judicial notice of the public statutes of this state.  
Kish v. Van Note
, 692 S.W.2d 463, 467 (Tex. 1985).

The fourth finding in question determined that car rental companies are engaged in mechanical pursuits and that Currey is engaged in the car rental business.  However, evidence of these matters was submitted in proper summary judgment form through Leslie Currey's affidavit.

As there was sufficient evidence properly before the court to support a finding on each of the issues for which improper evidence was submitted, we find that the evidence improperly submitted does not require a reversal.   We overrule the City's twenty-first point.

Currey argues that the challenged ordinance is a tax because its primary purpose is to raise revenue.
  
Conlen
, 519 S.W.2d at 623.  In support of that contention, Currey points to the introductory findings contained in the ordinance itself.  These findings include statements that:

1.  "[T]he Airport primarily relies on grants, rentals, fees, and charges from Airport operations to finance its development and pay for its operating costs;"

2.  "[O]n-airport operators paid the City reasonable rentals, fees, and other charges for the privilege of using the Airport, which collectively resulted in 
substantial revenue
 for the Airport . . . ."

3.  "[T]hat because of the disparity between the benefit many off-airport operators receive from their use of Airport facilities and the absence of any appreciable contribution to the operating costs, improvement, and development of the Airport by such off-airport operators, the City is being deprived of revenues which could be applied to maintaining and improving the Airport . . . this disparity may encourage on-airport operators to become off-airport operators and thereby 
deprive the Airport of additional revenues
 that are anticipated and needed in the future;" 

4.  "[I]n order to . . . 
protect
 established 
sources of revenue
 to the Airport, to 
maximize revenue
 to the Airport, to help defray the cost of construction, improvement, operation, and maintenance of the Airport, to pay for service and retirement of Airport debts . . . it is necessary and appropriate to enact an Ordinance regulating and requiring reasonable user fees . . . ."

(emphasis added).  Currey further contends that the tax created by the ordinance is an occupation tax because the ordinance is directed at particular occupations.  
Id.
 at 624.

In response, the City argues that the summary judgment evidence, at best, demonstrates that a material question of fact exists regarding the primary purpose of the fees authorized by the ordinance.  In support of that position, the City presents two theories.  First, the revenue generated by the off-airport user fee provides only a small percentage of the airport's operating expenses and, second, the fee serves the City's legitimate regulatory authority.

To support its contention, the City offers the affidavits of Bern Case (Case), the Director of Aviation at Lubbock International Airport, and Joe Horkey (Horkey), the Chairman of the Airport Board at the time the ordinance was adopted.  Both affiants aver that the ordinance was enacted to remove the incentive for on-airport users to move off-airport.  In his affidavit, Case states that the City expects the ordinance to generate approximately $30,000, that revenues from on-airport users total $438,000, and that operating expenses for the airport total $13,800,000.

The cases distinguishing fees from taxes can be broadly divided into those dealing with license fees and those dealing with user fees.  License fees are imposed for the granting of a license or permit to engage in a particular activity.  
Robinson v. Hill
, 507 S.W.2d 521, 526 (Tex. 1974); 
Prudential Health Care Plan v. Commissioner of Insurance
, 626 S.W.2d at 828.  The revenue derived from a license fee may be used to offset the cost of issuing the license or permit and to regulate those engaged in the licensed or permitted activity.  
Prudential Health Care Plan
, 626 S.W.2d at 829.

User fees impose charges on those making use of some resource.  Revenues derived from user fees may be used for the purpose of offsetting the cost of providing the resource, 
Rainey v. Malone
, 141 S.W.2d 713, 717 (Tex.Civ.App.--Austin 1940, no writ), or as an economic disincentive for use of that resource, 
Creedmoor Maha Water Supply Corp. v. Barton Springs-Edwards Aquifer Conservation Dist.
, 784 S.W.2d at 82; 
Beckendorff v. Harris-Galveston Coastal Subsidence Dist.
, 558 S.W.2d 75, 80 (Tex.App--Houston [14th Dist.] 1977), 
writ ref'd n.r.e.
, 563 S.W.2d 239 (Tex. 1978).  The ordinance at issue in the instant case involves both types of charges.

A reading of Currey's pleadings, motions and supporting briefs reveal that it did not challenge the City's power to exercise regulation over the businesses covered by the ordinance.  Likewise, it did not challenge the constitutionality of the annual permit fee of $50.  The annual permit fee imposed by the ordinance is consistent with license fees upheld by our supreme court.  
See
, 
e.g.
, 
Robinson
, 507 S.W.2d at 526 ($500 initial fee and $250 renewal fee for bail bondsman license upheld).  We hold that Currey failed to establish, as a matter of law, that the provisions of the ordinance requiring off-airport operators to obtain permits from the City and pay an annual permit fee are in violation of the Constitutional provisions on which it relies.  As the City's ordinance contained a severability clause, the trial court erred in enjoining this portion of the ordinance.

The City's ordinance also imposes what it terms a user fee.  In Section 5-55a of the ordinance, two levels of fees are imposed in addition to the annual permit fee.  For "commercial shuttle operators and parking facility owners" this section imposes a flat fee of $100 per month.  For "car and truck rental companies" the fee is nine percent of gross receipts from airport generated business above $25,000 in any year.  It is, of course, the constitutionality of this fee which is the focus of Currey's challenge.

We initially reject the City's argument that the fee is voluntary.  The City's position is that Currey could choose to avoid the fee by obtaining customers from sources other than the airport.  This position must be rejected as a purely theoretical possibility.  Given the nature of the car rental business, as recognized by the ordinance's presumption that 90% of the business of an off-airport car rental company's business is airport-generated, the decision to obtain business from the City's airport cannot be considered a voluntary choice.

In 
Conlen Grain and Mercantile, Inc. v. Texas Grain Sorghum Producers Board
, 519 S.W.2d at 620, the Grain Sorghum Producers Board, a state agency, imposed an assessment on grain sorghum to be collected by the grain sorghum processors.  The Texas Supreme Court found the assessment to be a tax despite provisions allowing the producer to recover the assessment paid.  
Id.
 at 623.  The statute 
authorizing the assessment by the Board
(footnote: 8) only provided for collection by "processors."
(footnote: 9) Because the definition of processors was limited to "persons within this state,"
(footnote: 10) the statute did not prevent producers from avoiding the assessment by selling grain sorghum to processors in other states.  Even so, this possibility did not prevent the supreme court from finding that the assessment was an "enforced contribution of money" rather than a voluntary payment.  
Id.
 at 623.  The fee in question here is no more voluntary than was the assessment imposed in 
Conlen
.

In challenging Currey's argument, the City relies on cases discussing privilege fees imposed to offset the cost of providing a benefit to the user, as well as cases discussing user fees imposed for the purpose of regulation or as an economic disincentive.  The City cites 
Rainey v. Malone
, 141 S.W.2d 713 (Tex.Civ.App.--Austin 1940, no writ), in support of its position that the user fee imposed by the ordinance is justified by the benefits Currey receives "in a manner not shared by the general public."  In 
Rainey
, a student of the University of Texas challenged a $1 student union fee imposed on all students by the university.  
Id.
 at 714.  According to the enabling statute, use of the revenue generated by this fee was:

for the sole purpose of operating, maintaining and improving the Texas Union; provided, however, that the amount of this fee may be changed at any time by the Board of Regents within the limits hereinbefore fixed in order that sufficient funds to support the Union may be raised and yet insuring that no surplus, other than the customary reserves, shall ever be accumulated.

Id.
 at 717.  Because the revenue generated by this fee was to be placed in a "Student Union Fee Account" and used exclusively for operation and improvement of the student union, the court held that it was a "privilege" or user fee.  
Id.

In contrast, revenues raised by the fee imposed by the City's ordinance are, by its own terms, used to pay the general operating expenses of the entire airport instead of limiting the application of the funds to only those facilities used by off-airport operators.  The fact that the facilities used by Currey and the other off-airport operators would not exist but for the overall operation of the airport presents no distinction from the fact in 
Rainey
 that the student union would not have existed but for the operation of the entire university.  In sum, the fee in question here is not a "privilege fee" of the type approved in 
Rainey
.

The City also cites several cases from federal courts
(footnote: 11) and a sister state
(footnote: 12) where similar fees have been upheld based, in part, on findings that the user benefited from the existence of the entire airport and not just the use of the airport's roadways.  However, each of the federal cases cited by the City involved challenges to fees on the basis that they were violative of the Commerce Clause of the United States Constitution.
(footnote: 13)  To determine whether a fee violates the Commerce Clause, courts apply the "fair approximation of use" test.
(footnote: 14)  Under this test, courts determine whether a fee places an impermissible burden on interstate commerce by considering the relationship between the fee imposed and the benefit received.  For example, the court in 
Alamo
 
considered the cost of operating the entire airport in determining the reasonableness of the fees in relationship to the costs incurred in operating the airport.  
Alamo
, 906 F.2d at 521.

A fee whose primary purpose is clearly to raise revenue could easily meet the fair approximation of use test 
and thus be acceptable under the federal constitution's commerce clause.  Therefore, the federal cases cited by the City provide no guidance for us in applying the 
Conlen
 test to determine whether a fee is a user fee or amounts to a revenue producing tax under state law.

Based on its summary judgment evidence that the revenue generated by the ordinance is expected to produce only 0.216% of the operating expense of the airport, the City argues that the fee's primary purpose cannot be to raise revenue.  We disagree.

The correlation between the amount of revenue generated and total expenditures is not probative of the purpose of a legislatively imposed fee.  For example, it cannot be questioned that an occupation tax, such as the $200 annual occupation tax imposed on attorneys,
(footnote: 15) is imposed for the purpose of raising revenue.  The fact that revenue from the tax may provide only 0.0314% of the state's operating expenses does not alter its character as revenue raising.
(footnote: 16)

For these reasons, we overrule the City's fourth point in which it contends that the trial court erred in finding that the user fee was a tax because there was insufficient evidence concerning the cost of regulating off-airport operators.

Next, we must decide if the ordinance's user fee has a regulatory justification.  The City relies on 
Creedmoor
, 784 S.W.2d at 79, and 
Beckendorff
, 558 S.W.2d at 75, to support its position that the ordinance has a regulatory justification.  Both of these cases involved challenges to user fees for the withdrawal of groundwater.  In determining that the fees were not improper taxes, the 
Creedmoor
 and 
Beckendorff
 courts found that the fees imposed economic disincentives to the use of natural resources and, as such, were primarily regulatory in purpose.  The revenue raised was merely a byproduct of the fee's primary purpose.  
Creedmoor
, 784 S.W.2d at 82; 
Beckendorff
, 558 S.W.2d at 80.

In considering those cases, it must be noted that the agencies seeking to impose the charges in 
Creedmoor
 and 
Beckendorff
 were charged with the responsibility of ensuring the "conservation, preservation, protection, recharging, [and] prevention of waste of the underground water," 
Creedmoor
, 784 S.W.2d at 80-81, and to "provide for the regulation of the withdrawal of groundwater within the boundaries of the district for the purpose of ending subsidence," 
Beckendorff
, 558 S.W.2d at 78.  The imposition of economic disincentives for withdrawing groundwater clearly and directly served the regulatory purpose with which the agencies were charged.

The City argues that the primary purpose of the user fee is to regulate, rather than to raise revenue, because the fee removes the economic incentive that businesses renting space at the airport might otherwise have if they moved off of the airport.  We cannot agree that this is a regulatory power within the scope of the powers conferred upon the City by the Municipal Airports Act.

The imposition of an economic disincentive to prevent a particular type of business from being conducted off, as opposed to on, the City's airport property does not regulate airport activities.  Rather, the disincentive infringes upon the ability of a business to choose 
not
 to enter into a contract with the City.  We do not believe that the City's authority to enter into contracts,
(footnote: 17) even exclusive contracts, for the provision of services at the airport, includes the power to coerce those who have contracted, or might contract, with the City into maintaining, or entering into, such contracts.

Having found that the fees sought to be collected by the City cannot be justified as a privilege fee for the use of the airport's roadways or as a regulatory measure, we are forced to conclude that the summary judgment evidence establishes, as a matter of law, that the primary purpose of the fee is to produce revenue.  Based on this conclusion, under the longstanding rule in Texas, we must find, as did the trial court, that the City's ordinance imposes a tax.  As the tax is only imposed on those engaged in a particular occupation, the tax is necessarily an occupation tax, 
Conlen
, 519 S.W.2d at 624, and, as such, is in direct conflict with Article VIII, section 1(f) of the Texas Constitution.  Therefore, the user fee provisions of the City's ordinance are void.  
Hoefling v. City of San Antonio
, 85 Tex. 228, 20 S.W. 85, 88-89 (1892).  Having shown the trial court that the user fee provisions of the ordinance were void and that enforcement of the provisions threatened a property right, Currey was entitled to the judgment declaring the user fee provisions of the ordinance void and enjoining the collection of those fees.  The City's first point is overruled in part.  The City's second, third, fifth, sixth, and seventh points of error are overruled.

Our holding that the user fee provisions of the ordinance are void as violative of the Texas Constitution obviates any discussion of the City's eighth and twenty-second points challenging the trial court's ruling that the fee was an unconstitutional attempt to levy an occupational tax upon a mechanical pursuit.

In its twenty-third point, the City asserts that the trial court erred in awarding Currey attorney's fees.  The propriety of an award of attorney's fee against a governmental entity in a declaratory judgment action is unsettled.  Several cases have held that attorney's fees may be awarded in such cases only when the defense of sovereign immunity has not been raised. 
Waugh v. City of Dallas
, 814 S.W.2d 492, 497 (Tex.App.--Dallas 1991, writ denied); 
Rodeheaver v. Steigerwald
, 807 S.W.2d 790, 793 (Tex.App.--Houston [14th Dist.] 1991, writ denied), 
cert. denied
, ___ U.S.___, 112 S.Ct. 1167, 117 L.Ed.2d 414 (1992);
 
Bullock v. Regular Veterans Assoc. No. 76
, 806 S.W.2d 311, 315 (Tex.App.--Austin 1991, no writ); 
Falls County v. Perkins and Cullum
, 798 S.W.2d 868, 872 (Tex.App.--Fort Worth 1990, no writ).  Other cases have held that a governmental unit may be liable for attorney's fees in a declaratory judgment action without stating whether or not the defense of sovereign immunity had been invoked.  
Duncan v. Pogue
, 759 S.W.2d 435, 435-36 (Tex. 1988); 
Hooten v. Enriquez
, 863 S.W.2d 522, 533 (Tex.App.--El Paso 1993, no writ).  Here, the City clearly raised the defense of sovereign immunity in its original answer.  That being so, we are squarely presented with the question of whether attorney's fees may be awarded against a municipality in an action brought under the Uniform Declaratory Judgments Act
(footnote: 18) (the Act).

City of El Paso v. Croom Const. Co.
, 864 S.W.2d 153 (Tex.App.--El Paso 1993, no writ), 
is the only case we have found in which a similar question was expressly presented and decided.  In that case, the majority concluded that attorney's fees may be awarded against a municipality in a declaratory judgment action.  
Croom
, 864 S.W.2d at 155.  En route to its decision, the court noted that the Act applies to "persons" defined as follows:

In this chapter, 'person' means an individual, partnership, joint-stock company, unincorporated association or society, 
or municipal or other corporation of any character
. (emphasis added).

Id.
 at 154-55 (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.001 (Vernon 1986)).

We join with the El Paso Court of Appeals in concluding that the Act clearly waives immunity for municipalities in actions seeking declaratory judgments and, indeed, requires their joinder in any action involving the validity of a municipal ordinance.  
See
 Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004, 37.006 (Vernon 1986).

Section 37.009 of the Act provides that, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."  
Id.
 § 37.009.  As did the El Paso court, we find the legislature expressly included municipal corporations within the full ambit of the Act.  Indeed, there is nothing in the Act indicating any legislative intent to exempt municipalities from the section authorizing the award of attorney's fees and costs.  Accordingly, we overrule the City's twenty-third point.

Finally, the remainder of the City's points fail to meet the minimum requisites of Rule 74(f) of the Texas Rules of Appellate Procedure.  The City fails to cite any authority or present any argument of more than one sentence in its ninth, twelfth, nineteenth, and twentieth points of error.  The eighteenth point contains a two-sentence argument.  Failure to cite authority or discuss the facts requisite to maintain a point of error waives the point.  
New York Underwriters Ins. v. State Farm
, 856 S.W.2d 194, 204 (Tex.App.--Dallas 1993, no writ); 
Board of Comm. of Beaver County v. Amarillo Hospital Dist.
, 835 S.W.2d 115, 122-23 (Tex.App.--Amarillo 1992, no writ).  Consequently, we need not address these points.

In conclusion, we hold that the trial court erred in declaring invalid and enjoining the enforcement of those provisions of the off-airport user fee ordinance requiring permits and payment of the annual fees for those permits.  However, the trial court did not err in declaring invalid the user fee provisions of the ordinance and enjoining the City from seeking to recover those fees.  Nor did it err in awarding attorney's fees to Currey.

Accordingly, the judgment of the trial court is reformed to delete that portion declaring invalid and enjoining enforcement of those portions of the ordinance requiring off-airport operators to obtain permits and to pay an annual fee for such permits.  Tex. R. App. P. 80(b).  As reformed, the judgment is affirmed.

John T. Boyd

   Justice

Do not publish.

FOOTNOTES
1:
Ground transportation services are defined by the ordinance as "[c]arrying, delivering, or transporting passengers, customers, baggage, cargo, freight, or mail for consideration or as a courtesy to or from an off-airport operator's place of business."

2:
The ordinance offers no specific mechanism for meeting this burden or for further review if the City and operator do not agree on the percentage of airport generated business.

3:
The record does not reflect if this requirement is placed on those who rent space at the airport.

4:
Each of those cases arose in the context of claimed violations of federal antitrust law.  

5:
Acts of April 7, 1913, 33rd Leg., 1913 Tex. Gen. Laws 307.

6:
The City has notably ignored the first condition imposed on recipients of airport development grants, 
i.e.
, that "the airport to which the project relates [] be available for public use on fair and reasonable terms without unjust discrimination. . . ."  49 App. U.S.C. § 2210(a)(1) (1988).

7:
The City complains of Currey's offering the first finding as summary judgment evidence even though an identical statement is contained in an affidavit filed by the City as summary judgment evidence.

8:
Act of June 12, 1967, 60th Leg., R.S., ch. 462, 1967 Tex. Gen. Laws 1052 (repealed 1981).

9:
Id.
 § 15.

10:
Id.
 § 2(4).

11:
Alamo Rent-A-Car, Inc. v. City of Palm Springs
, 955 F.2d 30 (9th Cir. 1991)(per curiam); 
Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth.
, 906 F.2d 516 (11th Cir. 1990), 
cert. denied
, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); 
Toye Bros. Yellow Cab Co. v. Irby
, 437 F.2d 806 (5th Cir. 1971); 
Airline Car Rental, Inc. v. Shreveport Airport Auth.
, 667 F.Supp. 303 (W.D. La. 1987).  Not cited by the City, but relevant to our discussion is 
Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines
, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972).

12:
Jacksonville Port Authority v. Alamo Rent-A-Car, Inc.
, 600 So.2d 1159 (Fla.Dist.Ct.App. 1992).  

13:
U.S. Const. art. I, § 8, cl. 3.  In 
Jacksonville Port Authority
, the Florida appellate court misapplied the reasoning of the cases discussing the commerce clause to determine the status of a fee.  In apparent reliance on the analysis made in 
Jacksonville Port Authority
, the City contends that the difference between taxes and user fees is defined in 
Commonwealth Edison Co. v. Montana
, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981).  This is an inaccurate reading of that case.  The Court in 
Commonwealth Edison
 did not discuss whether the charge was a user fee or a tax, rather, it accepted the Montana Supreme Court's characterization of the charge as a tax and explicitly "put to one side" those cases reviewing challenges to user fees.  
Id.
 at 621.

14:
The United States Supreme Court set out this test in 
Evansville-Vanderburg Airport Auth.
, 498 U.S. at 716-17.

15:
Tex. Tax Code Ann. § 191.142 (Vernon 1992).

16:
This value is calculated assuming that all 55,000 of the state's licensed attorneys are liable for the tax (55,000 x $200 = $11,000,000).  Dividing the revenue raised, $11 million, by one half of the state's $70 billion biennial budget, Legislative Budget Board, Fiscal Size Up, 1994-95 Biennium, or $35 billion, results in the figure of 0.000314, or 0.0314 percent.

17:
As conferred upon the City by Article 46d-4 of the Municipal Airports Act.

18:
Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (Vernon 1986).