**TEXAS WATER COMMISSION and City of Arlington, Texas, Appellants,**

v.

**CITY OF FORT WORTH, Appellee.**

No. 3–92–502–CV.

Court of Appeals of Texas, Austin.

March 2, 1994.

Rehearing Overruled June 8, 1994.

Robert C. Grable, Susan G. Zachos, Kelly, Hart & Hallman, Fort Worth, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

## ON MOTION FOR REHEARING

ABOUSSIE, Justice.

The opinion issued by this Court on July 7, 1993, is withdrawn and the following opinion is substituted in lieu thereof.

The Texas Water Commission (the "Commission") and the City of Arlington appeal the district court's judgment reversing a Commission order and remanding the docket to the agency. The City of Fort Worth brings three crosspoints on appeal asserting the Commission's order exceeded its statutory jurisdiction. We will affirm the judgment of the district court.

## BACKGROUND

In 1966, Fort Worth and Arlington entered into a contract for a term of thirty-five years wherein Fort Worth agreed to allow the contents of Arlington's wastewater system to flow into Fort Worth's wastewater system for transportation to Fort Worth's treatment facility and to treat the wastewater upon its arrival. The parties agreed that Arlington would pay rates for these services, which would consist of a treatment facility charge and a transporting facility charge, both of which were further divided into a rental charge and an operation and maintenance charge. While the contract required that the transportation rental charge remain constant, it stipulated that the other factors were variable and would be reviewed and adjusted over the contract period.[1] For example, the treatment facility rental charge would be based on the current average construction cost per million gallons of the capacity of Fort Worth's treatment facility, which would change over time. Additionally, both operation and maintenance charges would be adjusted to reflect anticipated

Dan Morales, Atty. Gen., Susan D. Bergen, Asst. Atty. Gen., Austin, for Texas Water Com'n.

Grace Casstevens, Casstevens & Casstevens, Austin, for City of Arlington.

---

1. Originally, the contract anticipated review and adjustment of the charge rate every five years. A later amendment to the contract, still effective, allows review and adjustment annually.

trends.[2] The parties do not dispute that Fort Worth retained control over the calculation of these variable components in Arlington's rate.

In 1989, Fort Worth sent Arlington notice that its rate for 1989–90 would be 52.4 cents per 1000 gallons of wastewater. The record indicates that the previous year's rate was 46.5 cents per 1000 gallons. Arlington filed a petition with the Commission, claiming that the proposed rates were unreasonable and discriminatory. One of Arlington's complaints was that Fort Worth was incorrectly calculating its transportation charges.[3] Fort Worth immediately objected that the Commission did not have jurisdiction to review the proposed contract rate. After the examiner initially found the Commission had jurisdiction, Fort Worth agreed along with Arlington that the contract methodology did not reflect Fort Worth's actual cost of service. However, Fort Worth did not abandon its position that the Commission did not have jurisdiction over Arlington's complaint. Before the examiner, the parties' primary dispute was whether Fort Worth could charge Arlington for its proportional share of the overall treatment plant flow. The Commission found that Fort Worth could not include such a component in its cost of service and, using a cash basis methodology, ordered that the rate should be set at 33 cents per 1000 gallons. The Commission concluded that it had jurisdiction over Arlington's petition under section 13.043(f) of the Texas Water Code. Tex. Water Code Ann. § 13.043(f) (West Supp.1993). It further concluded that the rates in its order were just and reasonable and not unreasonably preferential, prejudicial, or discriminatory.

Fort Worth filed a suit for judicial review in district court under the Administrative Procedure and Texas Register Act ("APTRA"), Tex.Rev.Civ.Stat.Ann. art. 6252–13a (West Supp.1993). The district court found that, although the Commission had jurisdiction to hear Arlington's appeal of its wastewater rate, it could not modify the contractual rate unless it first found that such a rate would adversely affect the public interest. The court reversed the Commission's order and remanded the docket to the Commission.

The Commission brings three points of error and Arlington brings six points of error on appeal, attacking the district court's judgment reversing the Commission's order for its failure to find that the proposed contractual rate adversely affected the public interest. Fort Worth, in three crosspoints, asserts that the Commission lacks jurisdiction to review contractual rates between municipalities under any circumstances.

**DISCUSSION**

The Water Code section at issue here provides:

> A retail public utility that receives water or sewer service from another retail public utility or political subdivision of the state may appeal to the commission a decision of the provider of water or sewer service affecting the amount paid for water or sewer service.

Tex.Water Code Ann. § 13.043(f) (West Supp.1993).

We first address Fort Worth's crosspoint challenging the Commission's jurisdiction under this statute. Fort Worth contends that the statutory provision empowering the Commission to review decisions of a provider of water or sewer service does not authorize its review of contractual rates agreed upon between municipalities.

■ The statute does not expressly grant or deny the Commission the authority to review contractual rates. In fact, the statute does not define "contractual rates" as a particular type of rate. However, the statute expressly authorizes the Commission to review any decision of a provider that affects the amount a recipient public utility pays for service. Fort Worth's calculation of the variable components in Arlington's rate, which resulted in an increase from the previous year, was clearly a decision affecting rates.

---

**2.** Again, these anticipated trends were originally over the next five years but are now over just the following year.

**3.** Under the contract, Arlington's rates would not include any transportation component if the wastewater was received by Fort Worth at its plant meter instead of at collector main meters.

The plain language of the statute grants the Commission jurisdiction over Arlington's petition.

■■■ Fort Worth also asserts that even if the Commission has jurisdiction over wholesale wastewater rates set by contracts, the Commission cannot alter a rate set by a contract between two cities, because Section 791.026 of the Texas Government Code (the "Interlocal Cooperation Act") places such contract rates beyond the Commission's jurisdiction. The Interlocal Cooperation Act merely allows municipalities to enter into contracts with each other. The statutory provision that the power to enter into contracts "prevails over a limitation in any other law" refers to other statutes and charters that might directly prohibit a municipality from signing contracts and does not preclude later legislative action regarding such a contract. The Water Code gives the Commission jurisdiction over contractual rates, including contractual rates agreed upon between municipalities.

■ We hold that the district court correctly determined that the Commission had jurisdiction to review Arlington's petition. However, Fort Worth suggests that if section 13.043(f) authorizes the Commission's review in this docket, then this review unconstitutionally interferes with its contractual obligations. The Texas Constitution limits the state's ability to pass laws that impair contractual obligations to instances where the public safety and welfare must be protected. *See Texas State Teachers Ass'n v. State*, 711 S.W.2d 421, 423–25 (Tex.App.—Austin 1986, writ ref'd n.r.e.) (construing Tex. Const. art. I, § 16). Before addressing this issue, we must decide the *scope* of the Commission's jurisdiction to review rates affected by a providing municipality's decision. This question is raised by the Commission's and Arlington's second points of error, challenging the district court's ruling that the Commission was required to find Fort Worth's proposed rates adversely affected the public interest.

The Water Code provides:

In an appeal under this section [13.043], the commission shall ensure that every rate made, demanded, or received by any retail public utility ... shall be just and reasonable. Rates shall not be unreasonably preferential, prejudicial, or discriminatory but shall be sufficient, equitable, and consistent in application to each class of customers. The commission shall use a methodology that preserves the financial integrity of the retail public utility.

Tex.Water Code Ann. 13.043(j) (West Supp. 1993). In this docket, the Commission made no finding as to the reasonableness of rates demanded by Fort Worth, which is the initial inquiry under section 13.043(j) defining the scope of agency review. The Commission found that the rates it had calculated under a cash basis methodology were just and reasonable, but it did not address Fort Worth's contractual rate or why it was unjust, unreasonable, preferential, prejudicial, or discriminatory, and thus needed modification by the Commission.

■ In *High Plains Natural Gas Co. v. Railroad Commission*, 467 S.W.2d 532 (Tex. Civ.App.—Austin 1971, writ ref'd n.r.e.), this Court decided the scope of the Railroad Commission's appellate jurisdiction over gas service contracts between a city and a gas pipeline company. *Id.* at 534. The statute in question gave the agency the power to review, revise, and regulate all orders and agreements of companies that set gas pipeline rates. Tex.Rev.Civ.Stat.Ann. art. 6054 (West 1962). The statute did not explicitly require the agency to review the reasonableness of the providing company's rates. Nonetheless, we held that

in order to set the contract aside, the Appellant was charged with the burden of showing that a continuance of the contract would adversely affect the public interest in that it might impair the ability of the pipeline to continue its service, cast upon other customers an excessive burden or be unduly discriminatory.

*Id.* at 537. In support of our holding, we relied upon the United States Supreme Court's decision in *Federal Power Commission v. Sierra Pacific Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1955). There, the federal statute in question specifically required that before modifying contrac-

tual rates the agency make a finding that existing rates were unjust, unreasonable, unduly discriminatory, or preferential. Federal Power Act, 16 U.S.C. § 824e(a) (Supp.1993). The court held that the Commission's sole concern was whether the contractual rates adversely affected the public interest. *Sierra Pac. Power Co.,* 350 U.S. at 355, 76 S.Ct. at 372. The wording of section 13.043(j) of the Water Code is similar to that found in the Federal Power Act. Unlike the statute in *High Plains,* the provision here expressly requires the Commission to make a finding that the provider city's rates are unreasonably preferential, prejudicial, or discriminatory before modifying these rates so that they are just and reasonable. We need not imply such a requirement, as we did in *High Plains,* to ensure that the statute does not violate article I, section 16 of the Texas Constitution.

The district court correctly concluded that the appropriate scope of appellate review under section 13.043(f) of the Water Code requires that the Commission first make a finding that the rates affected by a "decision of the provider" adversely affect the public interest by being unreasonably preferential, prejudicial, or discriminatory. Moreover, the statute does not violate the constitutional limitation on laws affecting contractual obligations. Texas courts have reaffirmed the constitutionality of agency review of the reasonableness of contractual rates where the public interest is affected, as first defined in *High Plains.* *See Crystal City v. LoVaca Gathering Co.,* 535 S.W.2d 722, 725 (Tex.Civ. App.—El Paso 1976, writ ref'd n.r.e.); *see also Railroad Comm'n v. City of Austin,* 512 S.W.2d 345, 348–49 (Tex.Civ.App.—Austin 1974), *rev'd on other grounds,* 524 S.W.2d 262 (Tex.1975). Fort Worth concedes that Arlington could seek relief in district court if Fort Worth calculated the contractual rate in an unreasonable manner or otherwise breached the contract. Here, the statute does not impair any existing contractual obligation; it merely provides that the Commission may review decisions affecting water and sewer rates. We overrule Fort Worth's crosspoints concerning jurisdiction and the Commission's and Arlington's second points of error.

■ The Commission's first point of error complains that the district court had no jurisdiction to reverse the Commission's order on the basis it did because Fort Worth failed to raise the need for a "public interest" finding in its motion for rehearing, as required by APTRA § 16(e). Fort Worth asserted in its motion for rehearing that "the Commission's order also contains no findings regarding the rates agreed to by Arlington under the Comprehensive Contract, or that those rates are unjust, unreasonable, unreasonably preferential, prejudicial, discriminatory, insufficient, inequitable, or inconsistent." The motion further insists that "the Commission makes no findings ... that the public interest requires that certain rate provisions in existing contracts be abrogated." We hold that the motion was sufficiently definite to make the Commission aware of the error claimed and to allow the agency opportunity to correct the error or to prepare to defend it. *See Suburban Util. Corp. v. Public Util. Comm'n,* 652 S.W.2d 358, 364 (Tex.1983).

■ The Commission and Arlington contend that, by its silence during the agency hearing, Fort Worth waived its right to complain about the Commission's failure to find that the contractual rate adversely affected the public interest. Arlington further complains that Fort Worth's pleadings before the agency in support of a cash basis methodology constitute a judicial admission contrary to its present position on appeal; that Fort Worth's support of a cash basis methodology has estopped it from arguing in favor of a public interest finding requirement; and that the Commission's decision to use a cash basis methodology is supported by substantial evidence.

■ Fort Worth made it clear in its initial response to Arlington's petition that it took the position the Commission had no jurisdiction to modify contractual rates. It continued to object to the Commission's jurisdiction throughout the agency proceedings, and it only presented its evidence in support of its requested rate as an alternative position. Section 13.043(j) of the Water Code clearly indicates that before establishing its own rate, the Commission had to first find that

Fort Worth's rate was unreasonable in some manner. Fort Worth specifically pointed out this requirement in its motion for rehearing. The statute does not allow the agency to institute a rate proceeding without a "public interest" finding, even if all parties request that it do so. The reasonableness requirement is a jurisdictional requirement that cannot be avoided by waiver. We overrule the Commission's first and fourth points and Arlington's first and third through sixth points.

Finally, the Commission contends that the district court erred when it failed to rule upon several of Fort Worth's complaints in its petition concerning substantial evidence and agency procedure. Once the court reversed the Commission's order for its failure to make a "public interest" finding, it properly declined to decide further. We overrule the Commission's third point.

We affirm the judgment of the district court.