ACCEPTED
15-25-00104-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/19/2025 3:51 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00104-CV**

IN THE COURT OF APPEALS
FOR THE FIFTEENTH JUDICIAL DISTRICT
AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/19/2025 3:51:13 PM
CHRISTOPHER A. PRINE
~~Clerk~~

PUBLIC UTILITY COMMISSION OF TEXAS AND
NORTH FORT BEND WATER AUTHORITY,

*Appellants,*

*v.*

CITY OF FULSHEAR, TEXAS,

*Appellee.*

On Appeal from the 53rd District Court of Travis County, Texas
The Hon. Maya Guerra Gamble, Presiding Judge, Cause No. D-1-GN-24-004710

## REPLY BRIEF OF APPELLANT
## PUBLIC UTILITY COMMISSION OF TEXAS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection
Division

December 19, 2025

JORDAN PRATT
Assistant Attorney General
State Bar No. 24140277
Jordan.Pratt@oag.texas.gov

Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911

ATTORNEYS FOR APPELLANT
PUBLIC UTILITY COMMISION OF
TEXAS

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................iii

GLOSSARY OF ACRONYMS AND TECHNICAL TERMS.............................. vi

INTRODUCTION .........................................................................1

ARGUMENT ...............................................................................2

    I.      GRP Participants that pay the Surface Water Fee and GRP Participants that pay the GRP Fee are not similarly situated. ................................................................2

    II.     Fulshear does not pay the GRP Fee to the Water Authority for performance of any duty under Chapter 13 of the Water Code................................................................12

    III.    The Water Authority does not have any lines or facilities committed to furnishing Fulshear with actual water. ..................................................................18

    IV.    The proper method for Fulshear to appeal the GRP Fee is to challenge it in district court as an unconstitutional tax. ..................................................................24

PRAYER....................................................................................27

CERTIFICATE OF COMPLIANCE....................................................29

CERTIFICATE OF SERVICE .........................................................29

# INDEX OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Austin Chevrolet, Inc. v. Motor Vehicle Bd. & Motor Vehicle Div.*
    *of Tex. Dep't of Transp.*,
    212 S.W.3d 425 (Tex. App.—Austin 2006, pet. denied) ...................................3

*Beckendorff v. Harris-Galveston Coastal Subsidence Dist.*,
    558 S.W.2d 75 (Tex. App.—Houston [14th Dist.] 1977, writ
    ref'd n.r.e.) ......................................................................................................26

*Cadena Com. USA Corp. v. Tex. Alcoholic Beverage Comm'n*,
    518 S.W.3d 318 (Tex. 2017) ............................................................................3

*Cities for Fair Util. Rates v. Pub. Util. Comm'n of Tex.*,
    924 S.W.2d 933 (Tex. 1996) ..........................................................................22

*City of Sherman v. Pub. Util. Comm'n of Tex.*,
    643 S.W.2d 681 (Tex. 1983) .......................................................................1, 25

*In re CenterPoint Energy Hous. Elec., LLC*,
    629 S.W.3d 149 (Tex. 2021) ...........................................................................17

*In re Entergy Corp.*,
    142 S.W.3d 316 (Tex. 2004) ...........................................................................17

*In re Oncor Elec. Delivery Co.*,
    630 S.W.3d 40 (Tex. 2021) ........................................................................ 24, 27

*Lone Star Gas Co. v. State*,
    153 S.W.2d 681 (Tex. 1941) ...........................................................................22

*Mayhew v. Town of Sunnyvale*,
    964 S.W.2d 922 (Tex. 1998) .............................................................................3

*Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*,
    53 S.W.3d 310 (Tex. 2001) .........................................................................1, 24

*S. Tex. Water Co. v. Bieri*,
    247 S.W.2d 268 (Tex. App.—Galveston 1952, writ ref'd n.r.e.).......................7

*Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*,
952 S.W.2d 454 (Tex. 1997) .................................................................25

*Tex. Comm'n on Env't Quality v. Friends of Dry Comal Creek*,
669 S.W.3d 506 (Tex. App.—Austin 2023, pet. denied) ...................1

*Tex. Comm'n on Env't Quality v. Maverick Cnty.*,
642 S.W.3d 537 (Tex. 2022) .................................................................2

*Tex. Parks and Wildlife Dep't v. RW Trophy Ranch, Ltd.*,
712 S.W.3d 943 (Tex. App.—[15th Dist.] 2025, no pet.) ...................3

*Tex. Water Comm'n v. City of Fort Worth*,
875 S.W.2d 332 (Tex. App.—Austin 1994, writ denied).......................... 15, 16

*Thomas v. State*,
733 S.W.2d 675 (Tex. App.—Tyler 1987, writ ref'd) ........................4

**Statutes**

Tex. Spec. Dist. Code
§ 8813.002........................................................................... 11, 20
§ 8813.101(a)(1) ....................................................................6, 11
§ 8813.103(b)........................................................................9, 11
§ 8813.103(f) ............................................................................11
§ 8813.103(g)............................................................................11
§ 8813.111(a)(4) ......................................................................20
§ 8813.111(b)..................................................................... 16, 23
§ 8834.206(a) ..........................................................................6, 9

Tex. Water Code
§ 12.013(a) ...............................................................................15
§ 13.001(a) ...............................................................................12
§ 13.001(c) ...............................................................................12
§ 13.002(19)....................................................... 4, 13, 15, 18, 23
§ 13.002(20).............................................................................15
§ 13.002(21)........................................................... 4, 13, 17, 23
§ 13.002(23).............................................................................15
§ 13.002(24).............................................................................15
§ 13.002(25)....................................................................... 14, 15
§ 13.043(f)................................................... 13, 14, 16, 17, 23

§ 13.144..................................................................................................................14

§ 36.002(a) ..........................................................................................................8

§ 36.002(e) ..........................................................................................................8

## Other Authorities

*Commit*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/commit (last accessed Dec. 10, 2025) .........................18

*Furnish*, Black's Law Dictionary 608 (5th ed. 1979)................................................4

*Obligate*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/obligate (last accessed Dec. 10, 2025).........................18

*Potable*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/potable (last accessed Dec. 18, 2025).........................14

*Raw water*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/raw%20water (last accessed Dec. 19, 2025) ..................................................................................................................14

# GLOSSARY OF ACRONYMS AND TECHNICAL TERMS

| Term | Meaning |
|---|---|
| ALJ | Administrative Law Judge |
| AR | Administrative Record |
| Commission | Public Utility Commission of Texas |
| Fulshear | City of Fulshear |
| GRP Fee | Groundwater Reduction Plan Fee |
| GRP Participants | Groundwater Reduction Plan Participants |
| Subsidence District | Fort Bend Subsidence District |
| Water Authority | North Fort Bend Water Authority |
| Water Code | Texas Water Code |

## INTRODUCTION

As a creature of statute, the Public Utility Commission ("Commission") has no inherent authority and only has those powers that the Legislature expressly confers on it or the implied powers that are reasonable and necessary to carry out its express responsibilities. *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 315 (Tex. 2001). Regulation of groundwater pumping and subsidence control is not one of those powers. *City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681, 686 (Tex. 1983) (The Commission "is neither expressly nor impliedly granted power to regulate groundwater production or adjudicate correlative groundwater rights.").

The Commission's conclusion that it lacked jurisdiction to review the Groundwater Reduction Plan Fee ("GRP Fee") is supported by substantial evidence. The City of Fulshear ("Fulshear") does not argue that this conclusion was unsupported by substantial evidence, nor did the district court find that it was. The district court's sole basis for reversing the Commission's Final Order was that it was arbitrary and capricious. CR at 622-23. But the arbitrary-and-capricious standard is narrow, and courts should not use it as a broad all-encompassing standard for reviewing the rationale of agency decisions. *Tex. Comm'n on Env't Quality v. Friends of Dry Comal Creek*, 669 S.W.3d 506, 517 (Tex. App.—Austin 2023, pet. denied).

1

Fulshear's arguments at the district court and before this Court are the same as during the administrative proceeding. Fulshear's arguments are based on interpretations of the evidence and the Texas Water Code ("Water Code") to argue that it is receiving water service, even claiming that it is receiving actual water, Appellee Br. 26-28, despite the undisputed evidence in the record that Fulshear does not receive actual water from the North Fort Bend Water Authority ("Water Authority"). RR, AR Item 64 at 2. The Commission properly rejected Fulshear's arguments and Fulshear's interpretation of the statutory provisions granting the Commission appellate jurisdiction. The Commission is the sole judge of the weight of the evidence, and courts cannot substitute their judgment for that of the Commission. *Tex. Comm'n on Env't Quality v. Maverick Cnty.*, 642 S.W.3d 537, 544 (Tex. 2022). The Commission correctly applied the statutory definition of service and its appellate jurisdiction statute to the evidence in the record to conclude that it lacked jurisdiction because the GRP Fee is not an amount paid for water service. RR, AR Item 86 at 5-6. The Court should reverse the district court judgment and render judgment affirming the Commission's Final Order.

## ARGUMENT

I. **GRP Participants that pay the Surface Water Fee and GRP Participants that pay the GRP Fee are not similarly situated.**

An administrative agency's decision is arbitrary and capricious if it treats similarly situated applicants "differently without an articulated justification."

2

*Cadena Com. USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 335 (Tex. 2017) (quoting *Austin Chevrolet, Inc. v. Motor Vehicle Bd. & Motor Vehicle Div. of Tex. Dep't of Transp.*, 212 S.W.3d 425, 438 (Tex. App.—Austin 2006, pet. denied)). This standard has two elements in which "a deprived party must show (1) it was treated differently from other similarly situated persons, and (2) no reasonable basis exists for the disparate treatment." *Id*. The comparison requires that the different parties are similarly situated in a relevant way. *Tex. Parks and Wildlife Dep't v. RW Trophy Ranch, Ltd.*, 712 S.W.3d 943, 963 (Tex. App.—[15th Dist.] 2025, no pet.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex. 1998)).

Fulshear's argument is misplaced because the Surface Water Fee has never been appealed to the Commission, and the Commission has never exercised appellate jurisdiction to review the Surface Water Fee. Thus, the Commission did not treat Fulshear differently than similarly situated persons by concluding that it does not have jurisdiction over the GRP Fee. But even so, Fulshear fails to satisfy the first element because the two types of Groundwater Reduction Plan Participants ("GRP Participants")—those that pay the GRP Fee and those that pay the Surface Water Fee—are not similarly situated. Fulshear has never received surface water from the Water Authority and has never paid the Surface Water Fee. RR, AR Item 64 at 2. Instead, Fulshear belongs to the group of GRP Participants that pay the GRP

Fee. The two distinct groups of GRP Participants—those that pay the Surface Water Fee and those that pay the GRP Fee—are not similarly situated because the Water Authority does provide actual water to GRP Participants that pay the Surface Water Fee, but it does not provide actual water to those that pay the GRP Fee.

The Commission has appellate jurisdiction if the rate charging utility furnishes potable water to the appealing utility. *See* Tex. Water Code § 13.002(19), (21). The plain meaning of furnish is to "supply, provide, or equip, for accomplishment of a particular purpose," which "contemplates an act and the relinquishment of possession." *Thomas v. State*, 733 S.W.2d 675, 676-77 (Tex. App.—Tyler 1987, writ ref'd) (quoting Black's Law Dictionary 608 (5th ed. 1979)). This means that there must be a *transfer of possession* of actual water from the rate charging utility to the appealing utility for jurisdiction to exist. GRP Participants that pay the Surface Water Fee satisfy this jurisdictional requirement because they receive potable water from the Water Authority. *See* RR, AR Item 64 at 1. In other words, that subsection of GRP Participants pays the Surface Water Fee to the Water Authority *for* actual water. *See id*. at 2. Thus, the Water Authority is providing water service to the GRP Participants that receive surface water.

In contrast, there is no similar transfer of possession of actual water from the Water Authority to the GRP Participants that pay the GRP Fee and, thus, the Commission does not have jurisdiction over the GRP Fee rate. The group of GRP

4

Participants that pay the GRP Fee, such as Fulshear, use groundwater that they own, extracted from wells they also own and control. The GRP Fee is based on the amount of groundwater those GRP Participants report to the Water Authority that they have produced from their wells each month. RR, AR Item 93 at 5, AR Item 94 at 33. Fulshear claims that the evidence is "undisputed" that the Water Authority controls the groundwater wells, Appellee Br. 26, but does not cite to a single piece of evidence in the record to support this claim. Fulshear further claims that the Water Authority is the only entity authorized to withdraw water from groundwater wells and cites to stipulated facts that do not support this claim in any way. *Id*. at 26-27.

On the contrary, the record undisputably demonstrates that the Water Authority *does not* control the production of groundwater from wells within its jurisdiction. RR, AR Item 93 at 10. In fact, the applicable Rate Order states that the permitted groundwater well owners maintain operational responsibility and ownership of the groundwater wells. *Id*. Furthermore, members of this group are authorized to withdraw as much water as "reasonably determined by such owner to be needed by such owner, for itself or for its customers" with the only limitation that they cannot commit waste or be wasteful. *Id*. Additionally, the well permits confirm that Fulshear is the well owner. RR, AR Item 96 at 1.

The fact that the Water Authority calculates the total groundwater capacity within its jurisdiction does not mean that the Water Authority owns or controls the

groundwater, as alleged by Fulshear. Appellee Br. 27. The Water Authority has a duty to develop and implement a plan to facilitate compliance with the Fort Bend Subsidence District's ("Subsidence District") groundwater reduction requirements. Tex. Spec. Dist. Code § 8813.101(a)(1). In order to assure compliance, the Water Authority must calculate the total groundwater withdrawal from within its jurisdiction to determine if 60% has transitioned to surface water in compliance with the Subsidence District's groundwater reduction requirements. RR, AR Item 105 at 6. To do that, the Water Authority must have an accurate accounting of how much groundwater is being withdrawn within its jurisdiction, and it requires self-reporting of groundwater pumpage by each well owner to make that determination and, ultimately, ensure compliance with the Groundwater Reduction Plan. RR, AR Item 94 at 29.

Furthermore, to accomplish these regulatory objectives, the Legislature required groundwater wells to receive a permit from the Subsidence District. Tex. Spec. Dist. Code § 8834.206(a). The Water Authority is in turn only administratively responsible for these permits, which includes "permit renewal, payment of permit fees, requests for permit rebates, and *year-end pumpage reporting requirements*." RR, AR Item 93 at 10 (emphasis added).

This is not analogous to a water utility receiving a permit from the State for surface water and then selling that surface water to consumers, as argued by

6

Fulshear. Appellee Br. 28-29 Fulshear's comparison is misplaced for numerous reasons. As an initial matter, Fulshear's argument that providing water service means the "right to use" water, *id*. at 29, is based on an inapplicable 1952 case from the Galveston Court of Appeals that is not looking at what constitutes water service. Rather the issues in that case were whether a farmer entered a contract to receive water from an irrigation district, *S. Tex. Water Co. v. Bieri*, 247 S.W.2d 268, 269 (Tex. App.—Galveston 1952, writ ref'd n.r.e.), and additionally, whether the farmer used water received from the irrigation district or instead used drainage water. *Id*. at 273.

Without getting needlessly into the long history of State surface water rights, it is sufficient to point out that the Legislature created a comprehensive regulatory scheme over the use of surface water that is exhaustively covered in Chapter 11 of the Water Code, which is completely distinct from groundwater law in the State and totally unrelated to this proceeding. What is important for distinguishing Fulshear's comparison is that, under those circumstances above, the utility is *furnishing* water to its customers. That is, it is transferring actual water that it is permitted to use to its customers. Whether a utility has a permit granting it the use of surface water for that purpose is immaterial to the question of, as relevant here, whether it is providing water service. In this case, there is *no* transfer of actual water from the Water Authority to Fulshear. RR, AR Item 86 at 3.

Beyond that distinction, Fulshear's argument is misplaced for another reason—the permits issued by the Subsidence District and administered by the Water Authority are not a "right to use" groundwater. Fulshear owns the groundwater, owns the wells, and controls the production of groundwater from its wells. Tex. Water Code § 36.002(a); RR, AR Item 93 at 10, AR Item 96 at 1. The Water Code's codification of the common law rule that landowners own the groundwater under the surface of their property expressly states that this rule does not limit, *specifically*, the Subsidence District's statutory powers to *regulate* the use of groundwater in any manner authorized under its enabling statute. Tex. Water Code § 36.002(e). Thus, the statutorily required groundwater permits are not a "right to use" groundwater; rather, they are a regulatory tool employed to control and mitigate subsidence in Fort Bend County.

Fulshear makes an additional unsubstantiated claim that the Water Authority controls access to the groundwater by being listed as the permittee, and it uses this as "leverage" to charge fees based on the amount of groundwater pumped. Appellee Br. 29. This argument is not supported by the record or the statutory authority, nor does Fulshear even attempt to cite to any authority to support this claim. In reality, the Water Authority's power to charge the GRP Fee is not based on its status as permittee. As has been repeatedly demonstrated, the Water Authority is expressly granted the power to charge fees based on the amount of groundwater pumped from

8

wells within its jurisdiction. Tex. Spec. Dist. Code § 8813.103(b). This authority is not based on the permits issued by the Subsidence District under its own enabling statute. *Id*. § 8834.206(a). The Water Authority was designated as the permittee on all groundwater wells within its jurisdiction that were permitted by the Subsidence District and is only administratively responsible for the aggregate well permit. RR, AR Item 93 at 10. The Water Authority has the power to charge the GRP Fee even if it was not listed as the permittee on the aggregate well permit.

When permits are issued individually to groundwater wells, a limit is placed on the amount of groundwater that can be pumped. RR, AR Item 95 at 10. However, by aggregating all the groundwater well permits within the Water Authority's jurisdiction and listing the Water Authority as the permittee on the aggregate permit, the individual well owners have no limit on the amount of groundwater that they can pump from their wells. The limitations are instead based on the total amount of groundwater used within the Water Authority's jurisdiction. RR, AR Item 94 at 28-29, AR Item 95 at 11, AR Item 96 at 1. Thus, rather than transferring control and access to its own groundwater to the Water Authority, the aggregate permit means that the Water Authority places *no limit* on the amount of groundwater Fulshear can produce from its own wells. This is the benefit Fulshear received when it *willingly chose* to participate in the Groundwater Reduction Plan.

Additionally, the way the Water Authority structures the GRP Fee in relation to the Surface Water Fee does not transform it into an amount paid for actual water, as argued by Fulshear. Appellee Br. 15. The Surface Water Fee is calculated as a traditional water rate based on cost of service because the surface water users *are* receiving actual water from the Water Authority. *See* RR, AR Item 93 at 6, AR Item 97 at 12. The Surface Water Fee is charged per 1000 gallons of surface water that the GRP Participant receives from the Water Authority. RR, AR Item 94 at 33. The Water Authority then deducts $0.35 from the Surface Water Fee to represent the costs of operating groundwater wells to calculate the GRP Fee. *Id*. In turn, the GRP Fee is charged per 1000 gallons of groundwater produced from a GRP Participant's well. *Id*. But there is a perfectly rational reason for the Water Authority to structure the fees in this way, and it does not mean that the GRP Fee is a fee *for* the groundwater.

As Fulshear admits, if the GRP Fee was less than the Surface Water Fee, then the GRP Participants would have an incentive to continue pumping groundwater and to not transition to surface water from the Water Authority. Appellee Br. 5. This would be contrary to the express purpose that the Legislature created the Water Authority for, which was to implement the groundwater reduction requirements of the Subsidence District and to transition the groundwater users to alternative sources

10

of water in order to mitigate and reduce subsidence in Fort Bend County. Tex. Spec. Dist. Code §§ 8813.002, .101(a)(1).

The Water Authority is expressly granted the authority to charge fees based on the amount of groundwater produced. Tex. Spec. Dist. Code § 8813.103(b). This is separate from its authority to charge rates for water that the Water Authority furnishes to GRP Participants. *Id*. § 8813.103(g). Fulshear is incorrect that groundwater fees must be based on costs and that the Water Authority has no authority to charge groundwater fees as a disincentive to pumping groundwater. Appellee Br. 17. In fact, this is directly contrary to the Water Authority's enabling statute that lists numerous purposes for groundwater production fees, including to serve as a disincentive to pumping groundwater. Tex. Spec. Dist. Code § 8813.103(f). Furthermore, it would be illogical for the Water Authority to only be authorized to charge fees based on costs because, as has been demonstrated, the Water Authority does not own the groundwater or the groundwater wells, nor does it control the production of groundwater. The Water Authority does not, and cannot, incur *any* costs related to groundwater production.

Ultimately, the GRP Participants that pay the Surface Water Fee and those that pay the GRP Fee are receiving different services at different prices. The fact that they both pay a fee to the Water Authority, or that they are both GRP Participants, is not relevant. The relevant fact to determine whether they are similarly situated is

11

what they receive for paying the respective fees. Although they both receive collective compliance with the Subsidence District's groundwater reduction requirements by paying the fees, only the GRP Participants that pay the Surface Water Fee receive *actual water* from the Water Authority. Thus, the GRP Participants that pay the Surface Water Fee and those that pay the GRP Fee receive different "products" at different prices and, thus, are not similarly situated. But even if they were similarly situated, the fact that the GRP Participants that pay the Surface Water Fee receive actual water while those that pay the GRP Fee do not receive actual water is a reasonable basis for the Commission to treat them differently. Therefore, the Commission's conclusion that it lacked jurisdiction to review the GRP Fee was not arbitrary and capricious, and the district court judgment should be reversed.

## II. Fulshear does not pay the GRP Fee to the Water Authority for performance of any duty under Chapter 13 of the Water Code.

The Legislature granted the Commission regulatory authority under Chapter 13 of the Water Code "to protect the public interest inherent in the rates and services of retail public utilities." Tex. Water Code § 13.001(a). To carry out that purpose, the Legislature established under Chapter 13 "a comprehensive regulatory system that is adequate to the task of regulating retail public utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the retail public utilities." *Id*. § 13.001(c). To that end, the Commission was granted

12

appellate jurisdiction over decisions of a retail public utility or political subdivision affecting the amount paid for water service to another retail public utility. *Id.* § 13.043(f). The Water Code defines "service" broadly, but that definition is limited to only acts in performance of a duty under Chapter 13 of the Water Code. *Id.* § 13.002(21). The Commission correctly applied the Water Code's definition of service to conclude that it did not have appellate jurisdiction to review the GRP Fee. The Commission did not adopt a new standard or depart from precedent in reaching this conclusion.

There is no merit to Fulshear's argument that the Water Code's definition of "service" is inapplicable to appeals brought under section 13.043(f) because the definition of "service" refers to retail public utilities whereas appellate jurisdiction under section 13.043(f) refers to political subdivisions. Appellee Br. 19. The Water Code's definition of retail public utility is broad and includes "any person, corporation, public utility, water supply or sewer service corporation, municipality, public utility agency, *political subdivision* or agency operating, maintaining, or controlling in this state facilities for providing potable water service or sewer service, or both, for compensation." Tex. Water Code § 13.002(19) (emphasis added). Thus, there is no inconsistency between the Commission's appellate jurisdiction over political subdivisions under section 13.043(f) and the Water Code's use of the term retail public utility in its definition of service.

Additionally, the fact that the Commission's appellate jurisdiction under section 13.043(f) covers wholesale water service does not remove the Chapter 13 duty requirement. While Fulshear is correct that Chapter 13 is primarily concerned with retail water service, it also contains numerous provisions related to wholesale water service. Chapter 13 defines "wholesale water service" as "potable water . . . service . . . provided to a person, political subdivision, or municipality who is not the ultimate consumer of the service." Tex. Water Code § 13.002(25). For this proceeding, the most relevant provision in Chapter 13 regarding wholesale service requires utilities providing wholesale water service under contract to file a certified copy of the contract with the Commission. *Id*. § 13.144.

Even if Fulshear were correct that the Water Authority furnishes it groundwater at wholesale (it does not), Fulshear's complaint would still fall outside the Commission's jurisdiction under section 13.043(f). Wholesale water service means providing *potable* water for resale. Tex. Water Code § 13.002(25). Potable water is water "suitable for drinking." *Potable*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/potable (last accessed Dec. 18, 2025). In contrast, raw water is "water that has not been purified." *Raw water*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/raw%20water (last accessed Dec. 19, 2025). Here, Fulshear is arguing that the Water Authority furnishes it groundwater at wholesale. *See* Appellee Br. 19, 26. But groundwater is

14

untreated, or "raw" water. The Commission only regulates potable water, not raw water, under Chapter 13. *See* Tex. Water Code § 13.002(19), (20), (23), (24), (25). However, the Commission does have appellate jurisdiction for the furnishing of raw water at wholesale under Chapter 12. Tex. Water Code § 12.013(a). In fact, the Commission considered whether it had jurisdiction to hear Fulshear's appeal under section 12.013 but ultimately concluded that it did not because the Water Authority "does not provide water, raw or potable, to Fulshear." RR, AR Item 46 at 13. Fulshear did not appeal this conclusion.

The Commission has never exercised jurisdiction under section 13.043(f) to review fees not paid for performance of a Chapter 13 duty. Fulshear's reliance on *Texas Water Commission v. City of Fort Worth* to argue the contrary is misplaced. Appellee Br. 20. That case was about a contract the City of Arlington entered for wholesale wastewater service from the City of Fort Worth. 875 S.W.2d 332, 333 (Tex. App.—Austin 1994, writ denied). The issue there was whether the Commission had the authority to review *rates* set by *contract*. *Id*. at 334. Fort Worth argued that the Commission's review of its rates set by contract unconstitutionally interfered with its contractual obligations. *Id*. at 335. The court concluded that the Commission was granted the authority by the Legislature to review rates established by contract. *Id*.

Here, there is no contract for wholesale water service between Fulshear and the Water Authority, which is not surprising because Fulshear receives *no* actual water from the Water Authority. The Water Authority charges the GRP Fee pursuant to its statutory authority, and Fulshear pays the GRP Fee under its obligations as a GRP Participant. Tex. Spec. Dist. Code § 8813.111(b). In return, Fulshear receives compliance with the Subsidence District's groundwater reduction requirements, but it does not receive water service.

*Fort Worth* was not looking at whether Arlington was receiving service from Fort Worth but instead concerned the *scope* of the Commission's authority to review contract rates under section 13.043(f). *Fort Worth*, 875 S.W.2d at 335. In contrast, the issue in this proceeding was whether Fulshear receives water service from the Water Authority in absence of a contract. Without a contract demonstrating service, the Commission was required to apply the Water Code's definition of service to determine the threshold jurisdictional issue of whether Fulshear receives water service from the Water Authority and, as such, whether it could invoke the Commission's appellate jurisdiction under section 13.043(f).

If the Court were to accept Fulshear's interpretation and remove the Chapter 13 duty requirement, then the concept of "service" would be expanded so broadly as to encompass basically any fee charged by a political subdivision. The definition, without the Chapter 13 duty limitation, is *any* act performed or *anything* furnished

16

or supplied. Tex. Water Code § 13.002(21). This would extend the Commission's jurisdiction under section 13.043(f) to any fees charged by a political subdivision to a retail public utility. That expansion is not feasible nor desired. Furthermore, this would be inappropriate because the Court must give effect to every word chosen by the Legislature and not treat any language as surplusage. *In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 159 (Tex. 2021).

It is unsurprising that Fulshear would make this argument, given that Fulshear seeks to have the Commission review a fee that is not for providing *actual water*. Instead, Fulshear pays the GRP Fee to comply with the groundwater reduction requirements established by the Subsidence District. Unlike district courts, which have general jurisdiction and where jurisdiction is presumed, the Commission only has jurisdiction over matters *clearly* and *expressly* conferred by the Legislature or that are reasonably necessary to fulfill a function or perform a duty that the Legislature expressly placed with the Commission. *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004). In this case, the Legislature's express grant of appellate jurisdiction to the Commission under section 13.043(f) is only over amounts paid for performance of a duty under Chapter 13 of the Water Code. Because none of the Water Authority's acts are in performance of a Chapter 13 duty, the Commission correctly concluded that the GRP Fee is not an amount paid for water service; thus, the Commission lacked jurisdiction to review the GRP Fee. Consequently, the

17

district court erred in holding that the Commission's conclusion was arbitrary and capricious.

### III. The Water Authority does not have any lines or facilities committed to furnishing Fulshear with actual water.

Fulshear has not shown that any of the Water Authority's facilities are committed to Fulshear under the plain meaning of the term. The common definition of "commit" is "to pledge or assign to some particular course or use," to "obligate," or to "bind." *Commit*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/commit (last accessed Dec. 10, 2025). In turn, the common definition of "obligate" is "to bind legally or morally." *Obligate*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/obligate (last accessed Dec. 10, 2025). Additionally, the purpose of a retail public utility's facilities is to provide potable water for compensation. Tex. Water Code § 13.002(19). Thus, the Water Authority's facilities would be committed to Fulshear if they were specifically obligated or pledged to provide Fulshear with potable water. But those facts are not present. Simply having facilities is not sufficient to conclude that those facilities are committed to Fulshear.

The Water Authority uses its facilities to provide surface water to numerous GRP Participants. RR, AR Item 106 at 2-3. The fact that the Water Authority's facilities have remaining capacity does not mean that the remaining capacity is committed to Fulshear. Fulshear does not receive surface water, nor has it ever

18

received surface water, from the Water Authority. RR, AR Item 64 at 2. Any remaining capacity in these facilities could be used to serve any of the GRP Participants that already receives surface water from the Water Authority, any of the GRP Participants that have not yet transitioned to surface water, or it could not be used at all. Fulshear can point to nothing that shows this remaining capacity is "pledged" or "obligated" to Fulshear.

Fulshear reads too much into the Water Authority's statement that some of its facilities are expected to someday provide Fulshear with surface water. Appellee Br. 23. It is true that the Water Authority has consistently stated that at some point it will provide Fulshear with surface water. RR, AR Item 94 at 20. However, none of the Water Authority's facilities currently connect to Fulshear, and the Water Authority has no capability to serve Fulshear until those facilities are built. RR, AR Item 101, AR Item 106 at 4. Those future lines, if or when built, will connect to the Water Authority's existing infrastructure, and the surface water delivered to Fulshear in these projected facilities will move through segments of the Water Authority's existing facilities. RR, AR Item 101, AR Item 99 at 5-6. Thus, it is correct that once the Water Authority's infrastructure is extended to Fulshear, assuming that fact comes to pass, some portion of its existing facilities will be used to serve Fulshear. But the fact that at some undefined point in the future the Water Authority has stated an intent to construct facilities to serve Fulshear does not mean

that the Water Authority's existing facilities are *committed* to Fulshear. In other words, the Water Authority's existing facilities are not "pledged" to Fulshear simply because it has the intent to build facilities to connect Fulshear to its existing facilities at an unknown future date.

The Water Authority is under no obligation to provide surface water to all GRP Participants. Nor does the Water Authority expect or plan to provide surface water to all GRP Participants. RR, AR Item 106 at 3. The Water Authority's statutory duty is to implement the Subsidence District's groundwater reduction requirement to convert 60% of the total water consumed within its jurisdiction to surface water. Tex. Spec. Dist. Code § 8813.002; RR, AR Item 94 at 1. After implementation of the Subsidence District's groundwater reduction requirements, 40% of the total water consumed will still be groundwater, and some GRP Participants will continue to use groundwater exclusively. RR, AR Item 105 at 6, AR Item 94 at 35. The Water Authority's enabling statute grants it the power to determine who transitions to surface water and when that transition occurs. Tex. Spec. Dist. Code § 8813.111(a)(4). At the end of the day, the Water Authority's obligation is to ensure collective compliance with the Subsidence District's requirements, not to provide surface water to Fulshear.

Likewise, the 2008 planning document is not a sufficient basis to conclude that the existing facilities are committed to Fulshear. This document describes the

plan to implement the Subsidence District's groundwater reduction requirements and was issued before any facilities were constructed. RR, AR Item 94 at 1. While it does state that Fulshear will eventually receive surface water from the Water Authority, and that facilities will be built to deliver surface water to Fulshear, this document does not demonstrate that the Water Authority's *currently existing* facilities, built long after the document was issued, are committed to Fulshear. Most significantly, these "preliminary" plans are already out of date as the 2008 plan was for facilities to extend to Fulshear by 2025. RR, AR Item 94 at 20. Those facilities were never built, and there is no estimate or plan on when they will be built. RR, AR Item 106 at 4. Thus, the 2008 planning document does not demonstrate that the Water Authority's existing facilities, all of which are providing surface water to *other* GRP Participants and physically *cannot* provide water to Fulshear, are committed to Fulshear.

Furthermore, Fulshear's financial commitment to pay for facilities does not mean that those facilities are committed to serve Fulshear with actual water. Fulshear misrepresents the Commission's argument by claiming the Commission does not acknowledge that Fulshear is presently paying for the Water Authority's facilities by paying the GRP Fee. Appellee Br. 25. However, the Commission in its briefing in district court and in this Court has consistently recognized that Fulshear is

21

currently paying the GRP Fee and that it is used to construct the Water Authority's facilities. *E.g.* Appellant Br. 24, 35-36.

The Administrative Law Judge ("ALJ") acknowledged in the proposal for decision adopted by the Commission that Fulshear is presently paying for the facilities but nonetheless concluded that the obligation to pay for facilities or lines does not mean that the facilities are *committed* to serve Fulshear with actual water. RR, AR Item 74 at 9. The ALJ's reasoning was that "[t]he reference to 'any facilities or lines committed or used' indicates infrastructure that currently exists, or in ratemaking terms, used and useful." *Id.* In the ratemaking context, used and useful "refers to 'such property as has been acquired . . . in good faith and held for use in the reasonably near future in order to enable [a utility] to supply and furnish adequate and uninterrupted . . . service.'" *Cities for Fair Util. Rates v. Pub. Util. Comm'n of Tex.*, 924 S.W.2d 933, 935 (Tex. 1996) (quoting *Lone Star Gas Co. v. State*, 153 S.W.2d 681, 698 (Tex. 1941)). Accordingly, the ALJ agreed with the Water Authority that, based on the evidence, "the Water Authority does not *currently* have any facilities or lines committed to providing actual water to Fulshear." RR, AR Item 74 at 9 (emphasis added).

The issue is not whether Fulshear is paying for the facilities, but instead whether the Water Authority *currently* has facilities that are *committed* to serving Fulshear with actual water. The record undisputably demonstrates that there are no

22

facilities capable of serving Fulshear with actual water. RR, AR Item 101, AR Item 106 at 4. In other words, the Water Authority does not have any facilities "used and useful" for Fulshear. And while the Water Authority does have facilities to serve other GRP Participants with surface water, those facilities are not committed to serve *Fulshear* with actual water. To any extent the existing facilities are committed to Fulshear, they are committed to collectively comply with the Subsidence District's groundwater reduction requirements. Collective compliance is not a duty under Chapter 13 of the Water Code. Thus, the ALJ correctly concluded that "[p]aying a fee to collectively comply with other GRP participants is not the same as paying a fee to the Water Authority for potable water received." RR, AR Item 74 at 11.

Combining the statutory definitions of "service" and "retail public utility" with the appellate jurisdiction provision in the Water Code, the Commission has appellate jurisdiction over decisions of a political subdivision affecting amounts paid for lines or facilities committed to furnishing potable water. *See* Tex. Water Code §§ 13.002(19), (21), 13.043(f). The GRP Fee is not an amount paid for these facilities to furnish potable water to Fulshear. Fulshear's payment of the GRP Fee is made pursuant to its obligations under the Groundwater Reduction Plan, which requires the GRP Participants to collectively comply with the Subsidence District's groundwater reduction requirements. Tex. Spec. Dist. Code § 8813.111(b). To any extent the facilities are committed to Fulshear, they are committed to achieve

23

collective compliance, and Fulshear pays the GRP Fee, which is used to construct these facilities, for collective compliance. Fulshear *does not* pay the GRP Fee for water service. Rather, Fulshear pays the GRP Fee to reduce and mitigate subsidence in Fort Bend County.

The record demonstrates that the Commission correctly applied the statutory standard to the evidence and provided a reasoned justification for its conclusion that it lacked jurisdiction to review the GRP Fee. Consequently, the district court erred in holding that the Commission's Final Order dismissing Fulshear's petition for lack of jurisdiction was arbitrary and capricious.

## IV. The proper method for Fulshear to appeal the GRP Fee is to challenge it in district court as an unconstitutional tax.

The Commission has no inherent authority and only has those powers that the Legislature expressly confers on it or the implied powers that are reasonable and necessary to carry out its express responsibilities. *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 315 (Tex. 2001). Accordingly, the Supreme Court has recognized that "[t]he Commission's jurisdiction extends to customer-utility disputes regarding Commission-regulated activity." *In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 43 (Tex. 2021). The Commission does not have jurisdiction simply because a dispute involves a utility. *Id*. at 47. Disputes over a regulatory scheme for groundwater pumping and subsidence control *are not* disputes

24

over Commission-regulated activities that fall within its jurisdiction. *City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681, 686 (Tex. 1983).

Fulshear argues that if the Commission does not have jurisdiction to review the GRP Fee, then it has no avenue to appeal charges imposed by the Water Authority. Appellee Br. 30. But the fact that the Legislature did not include an appellate mechanism in the Water Authority's enabling statute does not mean that the *Commission* has jurisdiction to review the GRP Fee. This is an issue that Fulshear needs to take up with the Legislature, not the Commission. However, Fulshear is incorrect that there is no method to appeal the GRP Fee. In fact, Fulshear explains the very method that it should follow if it wants to challenge the GRP Fee. Appellee Br. 17-18.

When looking at charges by a governmental entity, courts apply the "primary purpose" test to determine whether the fee is a regulatory fee or a tax. *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 461 (Tex. 1997). Under the "primary purpose" test, if the statutorily created fee is designed to serve a regulatory purpose, then it is a regulatory fee. *Id*. On the other hand, if the fee is designed to raise revenue, then it is a tax. *Id*. The fact that a regulatory fee also raises revenue does not change the nature of the regulatory fee. The issue lies in whether the fee is "intended to raise revenue *in excess* of that reasonably needed for regulation." *Id*.

25

Under a similar statutory scheme to that at issue in this case, the Fourteenth Court of Appeals found that a fee charged by the Harris-Galveston Coastal Subsidence District based on the amount of groundwater pumped was a regulatory fee and not a tax. *Beckendorff v. Harris-Galveston Coastal Subsidence Dist.*, 558 S.W.2d 75, 80 (Tex. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The court concluded that the overall purpose of the statute creating the district was regulatory. *Id*. The statute was enacted for the purpose of regulating groundwater withdrawals, and the statute provided for the issuance of permits upon payment of a fee based on the amount of groundwater withdrawn from wells within its boundaries. *Id*. Thus, the court found that the fees were "intended to operate as an economic disincentive to groundwater withdrawal, and thereby regulate it." *Id*.

As has been demonstrated, Fulshear does not pay the GRP Fee for water service. The GRP Fee is a regulatory fee with the primary purpose to control and mitigate subsidence, and Fulshear pays the fee to collectively comply with the Subsidence District's groundwater reduction requirement. Even Fulshear acknowledges that the GRP Fee is a regulatory fee. Appellee Br. 18. Thus, any challenge to the GRP Fee must assert that the Water Authority is collecting revenue in excess of the regulatory purpose to control and mitigate subsidence. Under this analysis, the proper challenge to the GRP Fee is for Fulshear to file suit in district court against the Water Authority, alleging that the GRP Fee is an unconstitutional

tax. The Commission has no authority to review taxes levied by political subdivisions. *See In re Oncor Elec. Delivery Co.*, 630 S.W.3d at 43 (Commission does not have jurisdiction over disputes that do not involve a Commission-regulated activity).

**PRAYER**

Fulshear has not shown any reversible error in the Commission's Final Order finding it lacked jurisdiction over Fulshear's complaint. Accordingly, the Commission respectfully requests that the Court reverse the district court's judgment and render judgment affirming the Commission's Final Order.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection Division

 */s/ Jordan Pratt*
JORDAN PRATT
Assistant Attorney General

State Bar No. 24140277
Jordan.Pratt@oag.texas.gov

Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, MC 066
Austin, Texas 78711-2548
Phone: (512) 463-2012
Fax: (512) 320-0911

**Attorneys for Appellant Public Utility
Commission of Texas**

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I certify that this brief contains 6,505 words, as calculated by Microsoft Word, the computer program used to create this document.

*/s/ Jordan Pratt*
JORDAN PRATT

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the following attorneys via the Court's electronic filing case management system and/or electronic mail on December 19, 2025.

C. Joe Freeland
jfreeland@mandf.com
MATHEWS & FREELAND, LLP
2105 East MLK Jr. Blvd
Austin, Texas 78702
Tel: (512) 404-7800
Fax: (512) 703-2785

***Attorneys for Appellee***
***City of Fulshear, Texas***

Andrew S. "Drew" Miller
drew.miller@kempsmith.com
Daniela de Souza
daniela.desouza@kempsmith.com
KEMP SMITH LLP
2905 San Gabriel Street, Suite 205
Austin, Texas 78705
Tel: (512) 320-5466
Fax: (512) 320-5431

***Attorneys for Appellant***
***North Fort Bend Water Authority***

*/s/ Jordan Pratt*
JORDAN PRATT

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Laurent on behalf of Jordan Pratt
Bar No. 24140277
david.laurent@oag.texas.gov
Envelope ID: 109324242
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellant Public Utility Commission of Texas
Status as of 12/19/2025 3:57 PM CST

Associated Case Party: NORTH FORT BEND WATER AUTHORITY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Andrew Miller | 786857 | Drew.Miller@kempsmith.com | 12/19/2025 3:51:13 PM | SENT |
| Sharnezia Mitchell | | sharnezia.mitchell@kempsmith.com | 12/19/2025 3:51:13 PM | SENT |
| Greta Duran | | greta.duran@kempsmith.com | 12/19/2025 3:51:13 PM | SENT |

Associated Case Party: CITY OF FULSHEAR, TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Clarence Freeland | 7417500 | jfreeland@mandf.com | 12/19/2025 3:51:13 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David Laurent | | david.laurent@oag.texas.gov | 12/19/2025 3:51:13 PM | SENT |

Associated Case Party: PUBLIC UTILITY COMMISSION OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jordan Pratt | | Jordan.Pratt@oag.texas.gov | 12/19/2025 3:51:13 PM | SENT |